William M. NOBLES, et al., Plaintiffs,

v.

**RURAL COMMUNITY INSURANCE SERVICES, Defendant.**

**Civil Action No. 00–T–375–S.**

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 24, 2004.

B. Stephen Sansom, B. Stephen Sansom, P.C., Florala, AL, Marita K. Murphy, Murphy Law Office, Stanley J. Murphy, Tuscaloosa, AL, for plaintiff.

Douglass Taylor Flowers, Daniel F. Johnson, Lewis, Brackin, Flowers & Hall, Dothan, AL, Elizabeth T. Bufkin, W. Kurt Henke, Henke–Bufkin, Clarksdale, MS, for defendant.

## OPINION

MYRON H. THOMPSON, District Judge.

This lawsuit, which the court has described as having a "convoluted procedural history," *Nobles v. Rural Community Ins. Servs.*, 303 F.Supp.2d 1279, 1280 (M.D.Ala. 2004), was originally bought by plaintiffs William M. Nobles and Ronnie Hales in state court in February 2000, claiming that defendant Rural Community Insurance Services (RCIS) told them that their land was insurable under a multiple-peril crop-insurance policy and then later denied their crop-loss claims on the basis that their land was uninsurable. Nobles and Hales allege state-law breach of contract, fraud, suppression of material facts, negligence and wantonness, negligent and wanton failure to supervise and train employees, and bad faith.[1] On March 29, 2000, RCIS removed the case to this court based on diversity-of-citizenship jurisdiction.

*See* 28 U.S.C.A. §§ 1332 (diversity), 1446 (removal).

This case is now before the court on the parties' cross-motions for summary judgment. For the reasons that follow, the court will grant RCIS's motion in full.

## I. SUMMARY–JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed.R.Civ.P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Matsu-*

---

1. Nobles and Hales filed a motion to amend their complaint on December 10, 2002, which the court granted insofar as it added claims against RCIS. *Nobles v. Rural Community Ins. Servs.*, 303 F.Supp.2d 1279 (M.D.Ala.2004).

Instead of adding new claims against RCIS, however, that amended complaint simply asserted further bases for these claims against RCIS.

*shita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL BACKGROUND

Because the court finds in favor of RCIS, it will look at the facts in a light most favorable to Nobles and Hales. *See Antenor v. D & S Farms,* 88 F.3d 925, 927 n. 2 (11th Cir.1996). In 1999, Nobles and Hales decided to plant cotton on First American Farm in Walton County, Florida.[2] In order to pay for the crop, they had to secure financing, and, in order to secure financing, they were required by their banks and suppliers to purchase crop insurance. Nobles and Hales spoke with Joseph Carpenter, an authorized agent for RCIS, and Philip East, RCIS's regional sales manager, about insurance. East told them that, because their land was not listed as uninsurable in the actuarials published by the Federal Crop Insurance Corporation (FCIC), there would be no reason for it to be uninsurable.

The FCIC is both a governmental corporation and an agency of and within the United States Department of Agriculture (USDA). It was created pursuant to the Federal Crop Insurance Act (FCIA), 7 U.S.C.A. §§ 1501 to 1521.

Based on East's assurances, Nobles and Hales bought two types of coverage for their crops from RCIS. First, they bought multiple-peril crop insurance (MPCI). Under this policy, which is based on yield guarantees rather than dollars, they were guaranteed to produce a set number of pounds of cotton; for every pound they fell short of that guarantee, they would be paid an agreed-upon amount. While MPCI policies can be issued by private insurance companies, FCIC regulations and provisions govern the sale, issuance, and service of these policies. MPCI poli-cies are backed (reinsured) by the FCIC; all premiums collected for MPCI policies are paid to the United States government, and all claims paid under MPCI policies are paid with United States Treasury funds.

Second, Nobles and Hales bought an added-price-option (APO) policy, which would pay them an additional 30¢ per pound-of-cotton losses on top of any payment they received under the MPCI policy. The APO policy is separate from the MPCI policy; unlike the MPCI policy, it is issued and funded privately by RCIS.

That spring, Nobles and Hales planted their cotton crop on First American Farm. In late June, they filed acreage reports with RCIS stating that they each had a 50% interest in 7,787 acres of cotton on farm serial number 2303. Apparently, 870 of these acres were actually planted on farm serial number 2301, which is also part of First American Farm; however, Nobles and Hales did not make this distinction on the acreage report filed with RCIS, and RCIS says that it was unaware of these 870 separate acres until after this lawsuit was filed.

During the growing season, at the request of the FCIC's Risk Management Agency, RCIS adjusters Wayne Godwin and Robin Barnett inspected Nobles and Hales's crop to verify that they were using proper farming practices. In the course of those inspections, RCIS determined that some of Nobles and Hales's acreage might not be insurable because it had not been planted and harvested in one of the previous three crop years, thus making it ineligible for insurance under ¶ 9(a) of the MPCI policy. RCIS did not tell Nobles and Hales of its discovery, but it did spend a significant amount of time investigating the acreage in question to determine if it

---

**2.** Nobles and Hales also planted peanuts and bought coverage for that crop from RCIS. The parties have no dispute regarding Nobles and Hales's peanut crop.

was insurable under the terms of the MPCI policies.

Eventually, Nobles and Hales's crop failed due to drought. At some point thereafter, Godwin and Barnett told Nobles and Hales that 4,990 acres of their cotton on farm 2303 were uninsurable. Godwin and Barnett arrived at this number by: (1) looking at forms on file with the Farm Service Agency ("FSA"), which showed that only 1,687 acres of farm 2303 had been farmed in the previous three years; (2) determining that 104 acres were exempt from the requirements of ¶ 9(a) because they qualified under a USDA program; and (3) speaking with the Zorn Brothers, who had farmed 136 acres of the property in the prior three years, acreage not listed with the FSA. Thus, Godwin and Barnett concluded that these 1,927 acres were insurable under the MPCI policy and that the rest of Nobles and Hales's crop— the other 4,990 acres on farm 2303 and the then-unknown 870 acres on farm 2301— were uninsurable.

Nobles and Hales disagreed with Godwin and Barnett's findings and requested that their version of the insurance claim be submitted to RCIS. In late October, Nobles and Hales prepared a worksheet explaining their version of the claim—requesting compensation for 6,917 (1,929 + 4,990) acres on farm 2303 only—and this worksheet, along with one describing Godwin and Barnett's version of the insurance claim, was forwarded to RCIS.

Based on Godwin and Barnett's determination that 4,990 acres of farm 2303 had not been farmed in one of the three previous years, RCIS denied Nobles and Hales's claims for that acreage under both their MPCI and APO policies. The stated basis for this denial was that this land was ineligible for insurance under ¶ 9(a) of the MPCI policy. From the record, it is unclear whether, before filing this lawsuit, Nobles and Hales were paid for their crop losses on the 1,927 acres that all parties agreed were insurable.

RCIS's denial of their claims led Nobles and Hales to file this suit against RCIS. On November 21, 2000, pursuant to the arbitration agreement set forth in the MPCI policy, United States District Judge Ira DeMent, to whom the case was originally assigned, found that the parties had agreed to arbitrate any factual disputes and compelled the parties to arbitrate their factual disputes. *Nobles v. Rural Community Ins. Servs.*, 122 F.Supp.2d 1290 (M.D.Ala.2000).

On September 5 and 6, 2001, an arbitration panel heard evidence, and, on November 28, 2001, it found that coverage existed under the MPCI policy and the APO policy for the entire 7,787 acres for which Nobles and Hales sought coverage, and awarded them damages in the amount of all remaining unpaid indemnities under the MCPI and APO policies.

On December 13, 2001, Nobles and Hales moved to have this case reinstated to the court's active docket in order to seek relief on their state-law claims against RCIS.

## III. DISCUSSION

### A. Preemption

■ As an initial matter, RCIS argues that Nobles and Hales's state-law claims are preempted by federal law and should be dismissed.[3] RCIS says that, because it

---

**3.** Judge DeMent, in his November 2000 order, already addressed and rejected RCIS's preemption argument, finding that the FCIA does not preempt their state-law claims. *Nobles v. Rural Community Ins. Servs.*, 122 F.Supp.2d 1290, 1295 (M.D.Ala.2000). RCIS has not shown why the law-of-the-case doctrine does not prevent it from making its preemption argument again in this case. *See, e.g., Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983) ("As most commonly defined, the [law-of-the-case]

was complying with established FCIC rules, regulations, and directives when it determined that Nobles and Hales's acreage was not insurable, Nobles and Hales's state-law claims are inconsistent with FCIC regulations and therefore are preempted by federal law.

RCIS does not argue that the FCIA wholly preempts state law; *cf. Meyer v. Conlon,* 162 F.3d 1264, 1268 (10th Cir. 1998) (per curiam) ("The FCIA does not wholly preempt state law; rather, it preempts state law inconsistent with the purpose of the Act."); instead, it makes a conflict-preemption argument based on language in the Tenth Circuit Court of Appeals's decision in *Meyer,* where the court explained that "[s]tate law applies to FCIA contracts, with two exceptions: (1) when FCIC contracts provide that state law does not apply and (2) when state law is inconsistent with FCIC contracts." (*citing* 7 U.S.C.A. 1506(*l*)). RCIS also cites an FCIC General Administrative Regulation, 7 C.F.R. § 400.352 (state and local laws and regulations preempted), for the proposition that lawsuits based on actions authorized or required by the FCIC regulations or the FCIA are preempted by federal law. That section reads, in pertinent part,

> "State or local governmental entities or non-governmental entities are specifically prohibited from ... (4) levy[ing] fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies ... arising out of actions or inactions on the part of such ... entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations or procedures issued by the Cor-

poration (nothing herein is intended to preclude any action on the part of any authorized ... entity concerning any actions or inactions on the part of the ... company whose action or inaction is not authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations or procedures issued by the Corporation)."

7 C.F.R. § 400.352(b)(4). RCIS argues that, because it was required by FCIC regulations to find that Nobles and Hales's land was uninsurable—because it had not been farmed in one of the three years prior to 1999—their suit is preempted by federal law.

RCIS's argument is flawed for two reasons. First, RCIS's argument misunderstands the basis of a number of Nobles and Hales's state-law claims. The key act underlying Nobles and Hales's fraud claim, for example, is not RCIS's denial of their insurance coverage, but is instead RCIS's act of telling them that their land was insurable. While RCIS maintains that it was required to find that 4,990 acres of Nobles and Hales's cotton crop were uninsurable due to FCIC rules, it certainly was not required to misrepresent to them that their land was insurable when in fact it was not. Similarly, the basis for Nobles and Hales's suppression-of-material-fact and negligence-and-wantonness claims is RCIS's failure to tell Nobles and Hales about ¶ 9(a)'s one-in-three requirement. Again, while RCIS may have been required under FCIC rules to find that 4,990 acres of Nobles and Hales's cotton crop were uninsurable, those rules did not require it to fail to tell Nobles and Hales about the requirements of ¶ 9(a). As such,

---

doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent

stages in the same case."). In any event, the court agrees with Judge DeMent's conclusion.

Nobles and Hales's state-law fraud, suppression-of-material-fact, and negligence-and-wantonness claims fall under the parenthetical language in § 400.352(b)(4), which explains that "nothing herein is intended to preclude any action on the part of any authorized ... entity concerning any actions or inactions on the part of the ... company whose action or inaction is *not* authorized or required" under the FCIA or the FCIC rules and regulations. (Emphasis added).

Second, RCIS's preemption argument generally misunderstands those situations in which state law is inconsistent with the FCIA. Under RCIS's argument, any time an insurance company denies a claim because it believes FCIC regulations require the claim be denied, any state-law claims by the party whose insurance claim was denied would be preempted by federal law. The Eleventh Circuit, however, rejected a similar argument in *Williams Farms of Homestead, Inc. v. Rain and Hail Ins. Servs., Inc.*, 121 F.3d 630 (11th Cir.1997). In that case, three plaintiffs sued private insurance companies after crop-loss claims under their MPCI policies were denied pursuant to language in the policies. *Id.* at 631. On appeal, the defendants argued that any state-law claims asserted against a private insurer are preempted by the FCIA. *Id.* at 632–33. After analyzing the plain language of the FCIA, the court rejected the defendants' argument, finding that "Congress intended to leave insureds with their traditional contract remedies against their insurance companies. Such remedies include a state law breach of contract claim.... The existence of a claim against a private reinsured company is therefore consistent with the scheme of the FCIA." *Id.* at 635.

Similarly, the Tenth Circuit's decision in *Meyer*, which RCIS cites in support of its preemption argument, also requires a finding that Nobles and Hales's state-law claims are not preempted. In *Meyer*, the court looked at § 400.352(b)(4) and found that "the parenthetical language permits lawsuits based on agents' actions not authorized by the FCIA or the FCIC.... [It allows plaintiff's suit] as he asserts that the defendants failed to honor the terms of an FCIC contract—an action not authorized by the FCIA, the regulations, or the contract." *Meyer*, 162 F.3d at 1269. The court concluded that the plaintiff's state-law causes of action, including his claims of breach of contract, negligent misrepresentation and bad faith, were not preempted by the FCIA or FCIC regulations. *Id.* at 1270.

Similar to those state-law claims in *Williams Farms* and *Meyer*, Nobles and Hales's state-law claims are not preempted by the FCIA or FCIC regulations. Essentially, Nobles and Hales are arguing that RCIS took three actions that were not authorized or required by the FCIA, the MPCI contract, or FCIC regulations: (1) it represented to them that their land was insurable; (2) it failed to tell them about ¶ 9(a)'s one-in-three requirement; and (3) it denied their claims under the MPCI and APO policies when it had no justifiable reason for doing so. Under the plain language of § 400.352(b)(4), and as explained in the Eleventh Circuit's decision in *Williams Farms*, these type of claims explicitly are not preempted by the FCIA or FCIC regulations. As such, Nobles and Hales's state-law claims cannot be dismissed as preempted by federal law, and RCIS's preemption argument must be rejected.

## B. Preclusive Effect of Arbitration Panel's Findings

As a second preliminary matter, the court must determine what preclusive effect to give the arbitration panel's findings. After hearing the parties' evidence, the panel made three separate factual find-

ings. First, it found that "The crop land at issue includes Farm Nos. 2301 and 2303 and totals 7,787 acres of land." Second, the panel found that "Under the terms of the policies, all of the crop land at issue was insurable and not excluded from coverage." Third, the panel found that "Plaintiffs relied in good faith upon the misrepresentation(s) of the defendant or the defendant's agents concerning the insurability of Plaintiffs' crop land."

The Eleventh Circuit addressed the preclusive effect of an arbitration decision in *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352 (11th Cir.1985). In that case, the court explained that "[a]n arbitration decision can have res judicata or collateral estoppel effect.... When an arbitration proceeding affords basic elements of adjudicatory procedure, such as an opportunity for presentation of evidence, the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings, just as determinations of a court would be treated." (Citations omitted). The court listed those requirements that must be met for the application of collateral estoppel to an arbitration decision: "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action.... In addition, the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." *Id.* at 1360 (citations omitted); *see also id.* at 1361 n. 11.[4]

The parties here do not dispute that the arbitration proceeding afforded them the basic elements of adjudicatory procedure. The arbitration was held pursuant to the rules of the American Arbitration Association, which provide for discovery and other procedural safeguards akin to those in a judicial proceeding, and the arbitration panel's order itself notes that the panel "considered the testimony of the witnesses, exhibits, relevant law, and the submissions and arguments of the parties." The court therefore will limit its inquiry to the three requirements for collateral estoppel: the issue before the court must be identical to that heard by the arbitration panel, it must have actually been litigated in the arbitration proceeding, and it must have been a critical and necessary part of the arbitration panel's judgment.

■ An application of the requirements for collateral estoppel to the arbitration panel's first and second findings—that the land at issue included 7,787 acres on farms 2301 and 2303 and that this land was insurable under both the MPCI and the APO policies—shows that collateral estoppel bars RCIS from re-litigating the insurability of Nobles and Hales's land. First, that is the same issue that the arbitration panel addressed. This is shown not only by the panel's finding that coverage existed as to the 7,787 acres, but also by the scope of the arbitration provision to which the parties agreed. The terms and conditions of the MPCI policy, published at 7 C.F.R. § 457.8, ¶ 20(a), provide that, if the insured and the insurer "fail to agree on any factual determination, the disagreement will be resolved in accordance with the rules of the American Arbitration As-

---

4. The *Greenblatt* court also interpreted the Supreme Court's decisions in *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), and *McDonald v. City of Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), to require additional inquiries when "an important, nonarbitrable federal claim" is involved. *Greenblatt*, 763 F.2d at 1361. No federal claims are at issue in this litigation.

sociation. Failure to agree with any factual determination made by FCIC must be resolved through the FCIC appeal provisions...." As Judge DeMent noted in his order requiring arbitration, the factual determination made by RCIS and disputed by Nobles and Hales was "whether or not [RCIS] made a correct factual determination about Plaintiffs' land use." *Nobles*, 122 F.Supp.2d at 1296. The arbitration panel's express purpose, then, was to determine whether all or part of Nobles and Hales's land was insurable and, as a result, whether their land was covered by the MPCI and APO policies.

Second, the parties do not dispute that this was the issue that was actually litigated in the arbitration proceeding. While RCIS does not agree with the arbitration panel's decision—RCIS asserts in its summary-judgment motion that it "*still* believes said decision [that Nobles and Hales's land was uninsurable] was correct" (emphasis in original)—it nowhere argues that this issue was not litigated in front of the arbitration panel. In fact, in its description of the procedural background to this action, RCIS recognizes that Judge DeMent's November 2000 order "specifically held that the factual disputes as to the existence of coverage for the cotton acreage in question were to be determined in arbitration." The court therefore has no reason to believe that the insurability of Nobles and Hales's land was not the issue actually litigated in the arbitration proceeding. Finally, it is clear that the arbitration panel's finding that all 7,787 acres of Nobles and Hales's land were insurable was a critical and necessary part of the panel's judgment; it was the specific question the panel was to answer. Thus, be-

cause the three requirements for collateral estoppel are met as to the arbitration panel's finding that all of Nobles and Hales's land was insurable and was covered by the MPCI and APO policies, the court finds that RCIS and Nobles and Hales are bound by that factual determination.

On the other hand, an application of the three requirements for collateral estoppel to the arbitration panel's third finding—that Nobles and Hales relied in good faith on RCIS's "misrepresentation(s)" as to the insurability of their land—shows that RCIS cannot be estopped from re-litigating this factual finding. In their motion for summary judgment, Nobles and Hales argue that RCIS should be estopped from re-arguing all of the arbitration panel's findings; RCIS argues in response that Nobles and Hales's interpretation of the arbitration panel's findings is erroneous.[5]

██ Insofar as the panel found that Nobles and Hales relied in good faith on RCIS's "misrepresentation(s)," the parties cannot be estopped from challenging that finding because it does not meet the third requirement for collateral estoppel: it was not a critical part of the panel's judgment. It is true that Nobles and Hales's good-faith reliance could have been presented to the arbitration panel, as Judge DeMent's order allowed the arbitrator "to grant recovery for losses—even if they are not covered by the [insurance] policy—if [Nobles and Hales] show that they relied in good faith upon a misrepresentation of an insurance agent. Thus, even if the terms of Defendant's policy do not insure against losses on some 5,000 acres of Plaintiffs' cotton crop, the arbitrator may neverthe-

---

**5.** RCIS also argues that Nobles and Hales's motion is procedurally invalid, in that it seeks summary adjudication of specific facts rather than summary judgment as to any of Nobles and Hales's claims. Because the court must determine the estoppel effect of the arbitra-

tion panel's finding to resolve RCIS's motion for summary judgment, and because the court finds in RCIS's favor on that motion, the court need not resolve the parties' dispute over the procedural validity of Nobles and Hales's summary-judgment motion.

less award relief as if they do." *Nobles*, 122 F.Supp.2d at 1297 (footnote omitted).

The arbitration panel's award, however, did not grant relief to Nobles and Hales because they relied in good faith on RCIS's misrepresentations. Instead, the panel explicitly found that "under the terms of the policies, all of the crop land at issue was insurable and not excluded from coverage." The panel's determination that Nobles and Hales relied in good faith on RCIS's "misrepresentation(s)" was not a critical part of its judgment—even without this determination, the panel would have granted Nobles and Hales recovery because the 7,787 acres at issue were covered by the insurance policies—therefore collateral estoppel does not prevent RCIS from litigating that issue.

### C. Merits

#### 1. Breach of Contract

Having found that Nobles and Hales's state-law claims are not preempted by federal law and that the parties are bound only by the arbitration panel's finding that all 7,787 acres of Nobles and Hales's land was covered by the MPCI and APO policies, the court now turns to the merits of Nobles and Hales's claims.

Addressing Nobles and Hales's breach-of-contract claim (Count I) first, RCIS argues that it should be granted summary judgment on this claim because Nobles and Hales were awarded their full contractual damages in the arbitration proceeding, and therefore have had their breach-of-contract claim satisfied. Nobles and Hales have not responded to this argument in any way.

■■■ In Alabama, damages for breach of contract "should return the injured party to the position he would have been in had the contract been fully performed. These damages are generally those that flow naturally from the breach. However, the injured party is not to be put in a better position by a recovery of damages for the breach than he would have been in if there had been performance." *Smalley Transp. Co. v. Bay Dray, Inc.*, 612 So.2d 1182, 1186–87 (Ala.1992) (citations omitted). Furthermore, it is clear that ordinarily neither punitive damages nor damages for emotional distress are available under Alabama law in breach-of-contract actions. *Bowers v. Wal–Mart Stores, Inc.*, 827 So.2d 63, 70 (Ala.2001) ("Except for the identified types of emotionally intertwined cases . . . we have declined to extend emotional-distress damages to contract claims."); *Geohagan v. General Motors Corp.*, 291 Ala. 167, 279 So.2d 436, 438 (1973) ("In Alabama, as generally elsewhere, punitive damages are not recoverable for breach of contract."). Finally, the Alabama Supreme Court has found it proper to grant summary judgment where a plaintiff has already been fully compensated by the defendant for the available damages on his breach-of-contract claim. *See Burch v. Lake Forest Prop. Owners' Ass'n*, 565 So.2d 611, 612 (Ala.1990) ("Because the [defendant] has already compensated [the plaintiff] for the notice period provided in the contract, summary judgment was proper.").

■ In this case, the arbitration panel found that all of Nobles and Hales's land was insurable under both the MPCI and APO contracts and ordered that RCIS pay Nobles and Hales "all remaining unpaid indemnities under the insurance policies on the cotton planted on Farm Nos. 2301 and 2303 for crop year 1999." Therefore, Nobles and Hales have been returned to the position they would have been in had the contract been fully performed, and any additional recovery on their breach-of-contract claim would put them in a better position than if RCIS had performed the contract, in violation of Alabama law. *See Smalley*, 612 So.2d at 1187. Because No-

bles and Hales have been made whole, and are not entitled to any further damages on their breach-of-contract claim, summary judgment is due to be granted in favor of RCIS on this claim. *See Burch,* 565 So.2d at 612.

### 2. Fraud and Negligent or Wanton Training

Second, the court must grant summary judgment in RCIS's favor on two other claims asserted by Nobles and Hales—fraud and negligent or wanton training—because they are based on the assumption that part of Nobles and Hales's land was uninsurable under the MPCI and APO policies, when, in fact, as determined by the arbitration panel, all of Nobles and Hales's land was covered by those policies.

In their complaint, as the basis for their fraud claim (Count III), Nobles and Hales allege that:

"19. At the time plaintiffs purchased said cotton crop insurance policies issued by defendant RCIS, said defendant represented to the Plaintiff that if the plaintiffs complied with the terms and conditions of said cotton crop insurance policies as had been made known to the plaintiffs by the defendant and plaintiffs then suffered an insurable loss on their 1999 cotton crop, defendant RCIS would pay plaintiffs' loss according to the terms of said policies."

"20. The representations made by Defendant RCIS were false and said defendant knew that they were false, or said defendant recklessly misrepresented the true facts, or said representations were made by defendant RCIS by mistake, but with the intention that plaintiffs should rely upon them."

Similarly, Nobles and Hales's claim of negligent or wanton training (Count VI) is also based on the assumption that RCIS sold a policy to Nobles and Hales for land that was not insurable. Nobles and Hales's basis for that claim is that:

"30. Defendant RCIS negligently and/or wantonly failed to properly inform, train and supervise its agent(s) and employee(s) involved in selling cotton crop insurance to the plaintiffs."

"31. Therefore, defendant's agent(s) and/or employee(s), without adequate information, training and supervision from defendant RCIS sold plaintiffs crop insurance policies on cotton acreage that was otherwise uninsurable under the terms of said policies."

Looking at it differently, if Nobles and Hales's land was insurable, they would have no support for either of these claims: RCIS's representation that their land was insurable would not be fraudulent, and there would be no problem with RCIS's agents' or employees' sale of crop insurance policies to Nobles and Hales for their insurable land.

Of course, as discussed above, the arbitration panel explicitly found that Nobles and Hales's land was insurable and therefore was covered by the MPCI and APO policies, and the court has found that collateral estoppel bars the parties from challenging this finding. As such, the court must act as though RCIS's representations to Nobles and Hales—that their land was insurable—necessarily were true, and that Nobles and Hales's land was covered by the MPCI and APO policies; the arbitration panel found just that. Thus, Nobles and Hales cannot sustain a fraud claim, because RCIS's representation that their land was insurable was truthful; neither can they sustain a negligent or wanton training claim based upon RCIS having sold them an insurance policy for land that was uninsurable, because all of Nobles and Hales's land was found by the arbitration panel to be insurable.

The court will therefore grant summary judgment as to Nobles and Hales's claims of fraud and negligent or wanton training. Based on the preclusive effect of the arbitration panel's finding that Nobles and Hales's land was fully covered by the MPCI and APO policies, Nobles and Hales cannot sustain these claims.

### 3. Suppression of Material Fact and Negligence and Wantonness

■ Third, the court must grant summary judgment in RCIS's favor on two other claims—suppression of material fact (Count I) and negligence and wantonness (Count V)—because they are based on RCIS's failure to inform Nobles and Hales about the ¶ 9(a)'s one-in-three provision. Under both Alabama and federal law, however, Nobles and Hales are charged with notice of the content of their policy as it appears in the Code of Federal Regulations, and therefore cannot maintain claims for suppression of material fact or negligence and wantonness that are based on RCIS failing to inform them of the provisions of that policy.

The issue of whether Nobles and Hales had notice of the provisions of their insurance policy with RCIS has already been addressed by Judge DeMent, albeit with regard to the policy's arbitration provision rather than the ¶ 9(a)'s one-in-three provision. As Judge DeMent explained in his November 2000 order, "[i]t is undisputed that the [insurance] policies signed by plaintiff state that they are '[s]ubject to the provisions of the Federal Crop Insurance Act and the regulations issued under that Act.'... These regulations are published in the Code of Federal Regulations." *Nobles,* 122 F.Supp.2d at 1300. Judge DeMent then stated that, just as farmers who contract directly with the FCIC are charged with knowledge of the relevant insurance regulations and policy provisions, farmers who buy FCIC-reinsured policies from private insurance companies

should be charged with notice as well. *Id.* Finally, Judge DeMent held that, despite their argument to the contrary, Nobles and Hales were on notice of the arbitration provision in their insurance contract with RCIS. *Id.* at 1301.

Judge DeMent's logic holds as true for ¶ 9(a)'s one-in-three provision as it did for the arbitration provision in Nobles and Hales's contract with RCIS. Just as the arbitration provision was published in the Code of Federal Regulations, the one-in-three provision at issue is also so published. *See* 7 C.F.R. § 457.8, at ¶ 9(a) ("Acreage planted to the insured crop in which you have a share is insurable except acreage: (1) That has not been planted and harvested within one of the 3 previous crop years ...."). Under both Alabama and federal law, Nobles and Hales are charged with notice of this provision. Alabama law provides that "where contracts contain extraneous references of fact and to other documents, ... the parties are bound thereby. And he who omits to inform himself as to ... [the] contents and extent of such other writing referred to, in so far as it is reasonable and in contemplation of [the] parties to [the] contract, is bound thereby." *McDougle v. Silvernell,* 738 So.2d 806, 808 (Ala.1999) (quoting *Bates v. Harte,* 124 Ala. 427, 26 So. 898 (1899)) (alterations in original). The insurance contract between RCIS and Nobles and Hales made clear reference to the FCIA and the regulations promulgated thereunder, and Nobles and Hales have given no reason why they should not be deemed, under Alabama law, to have had notice of the language in ¶ 9(a).

Similarly, federal law, as explained in *FCIC v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), charges Nobles and Hales with notice of the provisions in the Code of Federal Regulations. In *Merrill,* it was undisputed that an agent for the

FCIC had told a farmer that his land was insurable, when under the FCIC regulations it was not. The FCIC denied the farmer's claim, and he brought suit. The Supreme Court found that the government was not bound by the erroneous representations of its agent, instead explaining that Congress, through the FCIA, explicitly limited the authority of the FCIC and its agents. *Id.* at 384, 68 S.Ct. at 3. The Court explained that the farmer was charged with notice of the terms of his policy, despite the agents's statements: "Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents." *Id.* at 385–86, 68 S.Ct. at 3. The Court concluded that "the ... Regulations were binding on all who sought to come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the Regulations or of the hardships resulting from innocent ignorance." *Id.*

While *Merrill* dealt with a farmer who contracted directly with the FCIC, at least one other court has applied its holding to a case such as this, in which farmers bought policies from private insurers that were reinsured by the FCIC. *See Walpole v. Great American Insurance Cos.*, 914 F.Supp. 1283, 1290 n. 12 (D.S.C.1994) (Norton, J.) (finding *Merrill's* holding "equally applicable to FCIC-reinsured policies"). This extended application of *Merrill's* holding makes sense. *See also Nobles*, 122 F.Supp.2d at 1300 ("*Walpole* makes perfect sense."). As the Supreme Court explained in *Merrill*, its holding "merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury. The 'terms and conditions' defined by the [FCIC], under authority of Congress, for creating liability on the part of the Government preclude recovery for loss ... no matter with what good reason the respondents thought they had obtained insurance from the government." *Merrill*, 332 U.S. at 385, 68 S.Ct. at 3–4.

Because the MPCI policy bought from RCIS by Nobles and Hales is reinsured by the FCIC, any recovery under that policy will charge the public treasury; as such, like the plaintiff in *Merrill*, Nobles and Hales are strictly bound by, and are assumed to have notice of, the terms and conditions defined by the FCIC for creating liability on the part of the government. One of those terms and conditions is ¶ 9(a)'s one-in-three requirement.

Thus, under both Alabama and federal law, Nobles and Hales are assumed to have had notice of the provisions of their MPCI contract, including ¶ 9(a)'s one-in-three provision. As such, they cannot maintain claims of suppression of material facts and negligence and wantonness that are based on RCIS's failure to inform them of that provision.

### 4. Bad faith

Fourth, the court will grant summary judgment in RCIS's favor on Nobles and Hales's bad-faith claim because that claim is deficient as a matter of Alabama law. Nobles and Hales assert two bases for their bad-faith claim; they argue that RCIS acted in bad faith when it: (1) refused to pay their insurance claim as to the 5,860 acres for which RCIS found their land to be uninsurable; and (2) failed to investigate properly their insurance claim.

In Alabama, "the plaintiff in a 'bad faith refusal' case has the burden of proving: (a) an insurance contract between the parties and a breach thereof by the defendant; (b) an intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); (d) the insurer's actual knowledge of the absence of any legitimate or argua-

ble reason;... In short, [the] plaintiff must go beyond a mere showing of nonpayment and prove a *bad faith* nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim." *National Sec. Fire & Casualty Co. v. Bowen,* 417 So.2d 179, 183 (Ala.1982) (emphasis in original). The plaintiff's burden in making a bad-faith claim is a "heavy" one. *Liberty Nat'l Life Ins. Co. v. Allen,* 699 So.2d 138, 142 (Ala. 1997).

The Alabama Supreme Court has divided bad-faith claims into two categories: "normal" bad-faith claims and "unusual" or "extraordinary" bad-faith claims. In "normal" bad-faith cases, the Alabama Supreme Court has applied a "directed-verdict-on-the-contract-claim" standard; under that standard, "the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury." *Dutton,* 419 So.2d at 1362. For a "normal" bad-faith claim, then, an issue of fact with regard to the validity of the plaintiff's insurance claim will prevent the bad-faith claim from being submitted to the jury. In other words, for a "normal" bad-faith claim, if there *is* genuine issue of fact as to whether the insurer legitimately denied the plaintiff's insurance claim, summary judgment should be granted rather than denied. *See, e.g., S & W Properties v. American Motorists Ins. Co.,* 668 So.2d 529, 533 (Ala.1995) ("All of the evidence ... suggests a dispute over a genuine issue of material fact. Therefore, the plaintiffs did not show that American Motorists had no legal or factual defense to the insurance claim ....[and] the judge properly entered the summary judgment for the insurer.").

On the other hand, the Alabama Supreme Court has been somewhat more lenient with "unusual" or "extraordinary" bad-faith claims, finding that the directed-verdict standard does not apply to certain unusual cases. *See National Ins. Ass'n v. Sockwell,* 829 So.2d 111, 128 (Ala.2002). "Unusual" bad-faith claims, however, have been limited to four types of claims: "those instances in which the plaintiff produced substantial evidence showing that the insurer (1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claims; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim." *Id.* at 129–30 (citing *State Farm Fire & Cas. Co. v. Slade,* 747 So.2d 293 (Ala.1999)). It is the plaintiff's burden to establish that her bad-faith claim is an "unusual" one. *Id.* at 129.

■ In this case, one of the bases that Nobles and Hales assert for their bad-faith claim is that RCIS failed to investigate their insurance claim. While Nobles and Hales's "failure to investigate" claim falls into one of those categories of bad-faith claims that could be considered "unusual" under Alabama law, Nobles and Hales have not argued that any part of their bad-faith claim is should be categorized as "unusual." In fact, beyond asserting in their complaint that RCIS failed to investigate their insurance claim, Nobles and Hales have nowhere argued that RCIS failed to investigate their claim, and have presented no evidence whatsoever to support their failure-to-investigate claim. As such, the court will treat both Nobles and Hales's "refusal to pay" claim and their fail-

ure-to-investigate claim as "normal" bad-faith claims under Alabama law, subject to the directed-verdict-on-the-contract-claim standard.

Nobles and Hales's failure-to-investigate claim does not meet that directed-verdict standard, and summary judgment must therefore be granted on their bad-faith claim insofar as the basis for that claim is RCIS's failure to investigate Nobles and Hales's insurance claims. As noted above, Nobles and Hales have provided no evidence whatsoever, and do not argue in their summary-judgment response, that RCIS failed to investigate their insurance claim. *See Holifield v. Reno,* 115 F.3d 1555, 1564 n. 6 (11th Cir.1997) ("[C]onclusory assertions ... in the absence of supporting evidence, are insufficient to withstand summary judgment."). In fact, the evidence requires just the opposite conclusion.

RCIS has produced affidavits from two of its employees, Therese Steppel and Anthony Barnett, stating that RCIS investigated Nobles and Hales's insurance claims and determined that 4,990 acres of their cotton crop were not insurable under the MPCI policy. Additionally, Steppel states in her affidavit that Nobles and Hales never requested indemnity on the 870 acres on farm 2301 until the arbitration proceeding, and RCIS has produced documentation signed by Nobles and Hales supporting this statement. This evidence is unrebutted by Nobles and Hales. Additionally, while RCIS did deny Nobles and Hales's claims as to 4,990 acres of their cotton crop, it granted their insurance claims under the MPCI and APO policies as to the remaining 1,927 acres for which they had purchased insurance. RCIS did this after not only analyzing FSA records, but also after separately determining that some of Nobles and Hales's land qualified under an exception to ¶ 9(a) and even interviewing other farmers to see if parts of

Nobles and Hales's land not on record with the FSA had been farmed. The only reasonable conclusion that can be drawn from RCIS having denied Nobles and Hales's claim in-part and having granted it in-part is that RCIS investigated Nobles and Hales's claim, as RCIS maintains it did, and decided that part of their acreage did not meet the requirements of the MPCI policy.

In other words, RCIS has presented facts to show why summary judgment is properly granted as to Nobles and Hales's failure-to-investigate claim—there exists a reasonably legitimate or arguable reason for their denial of Nobles and Hales's insurance claim—and Nobles and Hales have not rebutted RCIS's evidence with specific facts showing a genuine issue for trial, or even any argument as to why this claim should be sustained. The court will therefore grant summary judgment as to Nobles and Hales's bad-faith claim insofar as the basis for that claim is RCIS's failure to investigate their insurance claims.

Although for different reasons, Nobles and Hales's failure-to-pay claim also does not meet the directed-verdict standard. RCIS maintains that it had a reasonable basis for denying Nobles and Hales's claims as to 4,990 acres on farm 2303 and that it did not know until arbitration about the 870 acres on farm 2301 for which Nobles and Hales claimed coverage. Under the terms of the MPCI policy, *see* 7 C.F.R. § 457.8, "Acreage planted to the insured crop in which you have a share is insurable except acreage: (1) That has not been planted and harvested within one of the 3 previous crop years," subject to some exceptions that none of the parties argues is applicable here. 7 C.F.R. § 457.8, at ¶ 9(a). RCIS has produced evidence, in the form of affidavits, supporting its argument that it investigated the farming history of farm 2303 to determine if that land was insurable under the terms of the MPCI policy—specifically the "one-in-

three" provision—and was unable to find proof that 4,990 acres of Nobles and Hales's land had been farmed in one of the three years prior to 1999, or was otherwise exempt from the requirements of ¶ 9(a). Based on this finding, RCIS says that it concluded that those acres were uninsurable under the MPCI policy. RCIS has also produced affidavit evidence asserting that the APO policy provides for a payment only in addition to any made under the MPCI policy, and that it has no yield selection or guarantee of its own to trigger a loss. Because RCIS denied Nobles and Hales's claim as to 4,990 acres under the MPCI policy, then, it also denied their APO claim as to that acreage. Finally, RCIS has produced affidavit evidence and documentation supporting its claim that it did not know until the arbitration proceeding about the 870 acres on farm 2301 for which Nobles and Hales's claimed coverage.

While the arbitration panel ultimately found that RCIS was incorrect when it determined that Nobles and Hales's land was uninsurable under the MPCI and APO provisions, it is clear from above that RCIS has presented arguable reasons for having denied Nobles and Hales's insurance claims. *Cf. Attorneys Ins. Mut. v. Smith, Blocker & Lowther, P.C.,* 703 So.2d 866, 871 (Ala.1996) (finding that summary judgment was properly entered as to bad-faith claim where insurance had arguable, but ultimately incorrect, reason for failing to pay claim). As to the MPCI policy, RCIS denied Nobles and Hales's claims because 4,990 acres of their land on farm 2303 had not been farmed in one of the three years prior to 1999, a requirement that was undeniably part of the MPCI policy, and because Nobles and Hales nowhere indicated on their insurance forms that they were also farming 870 acres on farm 2301. Nobles and Hales nowhere argue that their land actually was farmed in one of those years. In a bad-faith case

such as this, however, Nobles and Hales can prevail only if they show the absence of any "reasonably legitimate or arguable reason" for RCIS's refusal to pay their claim. *Bowen,* 417 So.2d at 183; *see also Liberty Nat'l Life Ins. Co. v. Allen,* 699 So.2d 138, 143 (Ala.1997) ("To defeat a bad faith claim, the defendant does not have to show that its reason for denial was correct, only that it was arguable."). Nobles and Hales "must show that the insurance company had no legal or factual defense to the insurance claim." *Id.; see also Smith,* 540 So.2d at 695 ("[I]f any one of the reasons for denial of coverage is at least 'arguable' this court need not look any further, and a claim for bad faith refusal to pay the claim will not lie." (citation omitted)). Here, Nobles and Hales have not met their burden of showing the absence of a reasonably legitimate or arguable reason for RCIS to have denied their claim under the MPCI and APO policies, and summary judgment must therefore be granted in RCIS's favor on Nobles and Hales's bad-faith claim.

An appropriate judgment will be entered, granting RCIS's summary-judgment motion and denying Nobles and Hales's motion.