Rex RIGBY, Plaintiff,

v.

D.T. MARSHALL, Defendant.

No. Civ.A. 93–T–1351–N.

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 5, 2000.

Claudia H. Pearson, Nakamura Quinn & Walls, LLP, Birmingham, AL, Marion F. Walker, Marion F. Walker & Associates, Birmingham, AL, Priscilla Black Duncan, P.B. Duncan & Associates, LLC, Montgomery, AL, for Rex Rigby, Plaintiff.

Thomas T. Gallion, III, Haskell Slaughter Young & Gallion, LLC, Tryone Carlton Means, Thomas Means Gillis & Seay PC, Robert M. Weinberg, John W. Adams, Jr., Thomas Means Gillis & Seay PC, Montgomery, AL, for D.T. Marshall, Defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Rex Rigby brings this lawsuit against defendant D.T. Marshall, in his official and individual capacities as sheriff of Montgomery County, Alabama. He alleges violations of federal law as enforced through 42 U.S.C.A. § 1983. Jurisdiction is proper under 28 U.S.C.A. § 1331. The sole remaining claims in this case are Rigby's charges that he was subjected to adverse employment decisions in violation of the first amendment and the due process clause of the fourteenth amendment to the United States Constitution, and the sole remaining aspect of these claims is Rigby's request for injunctive relief against Marshall in his official capacity. Currently before this court is Marshall's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, the motion will be granted.

## I. SUMMARY–JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); see also *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, for which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the nonmoving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL BACKGROUND

Rigby and Marshall have submitted affidavits and other factual materials appropriate for this court to consider in ruling on a Rule 56 motion. See Fed.R.Civ.P. 56(e). Viewed in the light most favorable to Rigby, the facts are as follows.

Rigby was a deputy sheriff for Montgomery County, Alabama from 1983 to 1993. In 1991, Rigby was a non-probationary deputy sheriff and a member of the drug unit of the Montgomery County Sheriff's Department. In February 1991, Rigby participated in a successful undercover drug-purchase operation on the basis of information received from an informant. Because of incorrect information in an affidavit used to procure a search warrant, which was to be used in conjunction with the undercover operation, the purchase

was conducted but no search was made. The individual who purchased the drugs was never arrested or prosecuted.

Following this undercover operation, Rigby was accused of falsifying information on the affidavit. Rigby admitted the information was incorrect, but only because of his failure to proofread the affidavit carefully. Nonetheless, Rigby was threatened with a grand-jury indictment if he did not agree to a transfer out of the drug unit. Rigby agreed to the transfer and was reassigned.

In July 1991, Rigby was informed that the purchaser of the illegal drugs had been involved in an intimate relationship with Deputy Chief Huggins. Then–Sheriff Jones instructed Rigby to put the allegations in writing, which he did. At some point, Rigby also came upon information that Huggins had assaulted a woman who was, it appears, related to the drug purchaser.

Thereafter, Rigby's relationship with Jones and Huggins deteriorated. Rigby was informed on several occasions by members of the Sheriff's Department that he was being investigated on various charges of misconduct. Rigby was told by one deputy that he had been instructed to "write him [Rigby] up" for any possible violation.

On March 18, 1993, while on duty, Rigby was called by his wife and told that a strange car had pulled into the driveway of his house, stopped, and then sped away. Rigby and a fellow deputy in a different car responded to the call and proceeded to intercept the car. The individuals in the car agreed to go to the Sheriff's Department for questioning and were later released.

Later that day, Sheriff Jones began an investigation of Rigby's conduct during this incident. Rigby was subsequently placed on administrative leave without pay and disciplinary charges were then brought against him on assorted charges of misconduct. A hearing before the Sheriff's review board was held, and the board recommended termination. Rigby appealed to the Montgomery City–County Personnel Board, which upheld his termination. Rigby's application for unemployment-compensation benefits was opposed by the Sheriff's Department. After a hearing in front of an unemployment-compensation-benefit-appeal referee on July 9, 1993, Rigby was granted only partial unemployment benefits.

## III. DISCUSSION

### A.

■ Rigby's scattershot attempt to make out a substantive or procedural due-process violation is insufficient. Substantive due-process claims of the nature asserted here for deprivation of employment are not cognizable in this circuit. *See McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994), *cert. denied,* 513 U.S. 1110, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995); *Thornquest v. King,* 82 F.3d 1001, 1003, n. 2 (11th Cir.1996). His procedural claim suffers the fatal flaw of failing to allege even an inadequate state post-deprivation process. *See McKinney,* 20 F.3d at 1564; *Hearn v. Board of Public Educ.,* 191 F.3d 1329, 1332 n. 5 (11th Cir.1999). If his claim is that the procedures set out by state law were not followed, then Rigby is better advised to assert his claim in state, not federal, court. *See, e.g., Goolsby v. City of Montgomery,* 805 F.2d 1008, 1010 (11th Cir.1986).

### B.

Marshall urges that this court not reach the merits of the first-amendment retaliation claim by virtue of collateral estoppel. He argues that Rigby cannot claim in federal court that he was discharged for exercising his first-amendment rights when a

state administrative body has already found that he was discharged for violations of employer policy and procedures in connection with his duties. Because Rigby chose not to pursue his right of appeal to Alabama state courts, Marshall argues further, the determinations of the administrative body are binding on this court and preclude his claim.

■ Under § 1983, this court must afford the unreviewed finding of a state administrative agency the same preclusive effect as it would be entitled in a state court, so long as the agency was acting in a judicial capacity and resolved disputed issues of fact properly before it after the parties had an adequate opportunity to litigate. *See Thornquest v. King*, 82 F.3d 1001, 1004 (11th Cir.1996); *see also University of Tenn. v. Elliott*, 478 U.S. 788, 789, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986). That the unemployment-compensation-claim hearing was judicial in nature is not disputed. Therefore, the only issue is whether, under Alabama law, Rigby's claim that his termination was retaliatory was resolved after an adequate opportunity to litigate. After careful consideration of the transcript of the unemployment-compensation hearing and other evidence submitted by the parties, the court finds that it was.

■ Under Alabama law, the doctrine of collateral estoppel applies to issues raised at an administrative proceeding if five elements are present: (1) identity of the parties or their privy; (2) identity of the issues; (3) an adequate opportunity to litigate the issues by the parties in the administrative proceeding; (4) actual litigation of issues to be estopped; and (5) necessity of the findings on the issue to be estopped to the administrative decision. *See Wal–Mart Stores, Inc. v. Smitherman*, 743 So.2d 442, 444 (1999). The *Smither-*

*man* court held that an employee was collaterally estopped from relitigating in state court the findings made by an unemployment-compensation-appeals referee and thus could not establish a prima-facie case for retaliatory discharge. *Id.* at 443. The facts of *Smitherman* are indistinguishable in any material way from the present case and govern this court's conclusion.

Smitherman alleged that she was illegally fired by her employer, Wal–Mart, in retaliation for filing a workers' compensation claim. Wal–Mart claimed that Smitherman was fired for violations of its employment policy, namely, making profane and derogatory remarks about a manager in the presence of co-workers. Following her termination, Smitherman filed for unemployment-compensation benefits and was partially disqualified from receiving them under § 25–4–78(3)(c) of the 1975 Alabama Code. That section provides for reduced benefits if the employee was "discharged from [her] most recent bona fide work for misconduct connected with [her] work" without prior warning for previous instances of similar misconduct. Smitherman appealed the examiner's determination to an appeals referee, who affirmed the original decision. *See Smitherman*, 743 So.2d at 443–44.

Before a final determination had been made on her unemployment-benefits claim, Smitherman filed an action against Wal–Mart in state court seeking damages for a retaliatory discharge. The Alabama Supreme Court found the elements of collateral estoppel had been met.[1] Identity of issues existed because the administrative hearing considered the reasons for Smitherman's discharge, reasons that she necessarily needed to prove in order to survive summary judgment in her retaliation case. In particular, it would have been necessary for Smitherman to prove that the reason

---

1. There, as here, element one of the five part test, identity of the parties, is not in dispute.

proffered by Wal–Mart for her termination was pretextual; of course, that was the subject of her benefits hearing. Importantly, the court also noted that Smitherman had, and did not meet, the burden of proving she was eligible for benefits under Alabama Unemployment Compensation Act. *Id.* at 445.

The *Smitherman* court also found that the administrative procedure set forth under Alabama's Unemployment Compensation Act affords parties an adequate opportunity to litigate the issues. *Id.* at 446. There, as here, both parties were represented at the appeals referee's hearing by counsel. To determine whether the issues to be estopped were actually litigated and determined, the *Smitherman* court noted a direct finding in the decision of the appeal referee confirming the use of a profane and derogatory term. And concerning the last element of the test, whether the finding was necessary to determination of the issue, the court determined that because Smitherman had the burden of refuting Wal–Mart's stated reasons for discharge and because she was found partially disqualified under § 25–4–78(3)(c), the appeals referee had to have found that she was discharged for the reason proffered by Wal–Mart, namely, violations of its employment policies.

Rigby offers two reasons why *Smitherman* should not control here. First, he argues that the issue before the referee in his case was denial of benefits under § 25–4–78(3)(b), not § 25–4–78(3)(c) as in *Smitherman*. Second, he contends his first-amendment-retaliation claim was not actually litigated before the referee and that Marshall has not made a contrary claim in his brief. Neither contention has merit upon review of the transcript of the appeals referee hearing, which, incidentally, was supplied to this court by Rigby.

The difference between subsections (b) and (c) of 25–4–78(3) is immaterial for the purposes of collateral estoppel here. Subsection (b) concerns termination where a prior warning had been given for improper conduct; subsection (c) applies in the absence of such a prior event. Under both sections, the burden remains upon the plaintiff to prove he is entitled to benefits. Here, Rigby was actually successful in arguing that his transfer in February 1991 did not constitute a prior warning. The referee ultimately modified the examiner's initial denial of benefits under § 25–4–78(3)(b) and instead awarded partial compensation to Rigby under § 25–4–78(3)(c).

Regardless of the section under which the denial was made, the transcript makes clear that Rigby extensively argued the events of February 1991 (the undercover drug purchase) out of which the alleged retaliatory action arose.[2] What Rigby did not do, inexplicably, was inform the referee of any of the reasons for his belief that Huggins was carrying on "an ongoing campaign of harassment" as a result of this incident.[3] He made no mention, as he does now in his affidavit, of the information he purportedly has that Huggins had an intimate relationship with the woman who purchased the drugs.[4] He made no mention, as he did in his October 1992 complaint against Huggins, of the information he purportedly has concerning an assault allegedly committed by Huggins. He made no mention, as he does now in his affidavit, that deputy sheriffs were instructed to find and write up any possible violation against him.[5] All this was known to Rigby before his administrative hearing, and, in this court's opinion, if proven, could

2. *See* Pl.Ex. 3, pp. 99–116.

3. *id.,* Ex. 5.

4. *See* Pl.Ex. 1. p. 5.

5. *See id.,* p. 2–3.

have supported a finding of retaliation. Rigby offers no reason for his silence in 1993

Rigby's story continues to change with the passage of time, but not in a way that can be explained by the discovery of new information or any other legitimate reason. Because these facts were known to Rigby at the hearing, they could have, and should have, been raised, regardless of whether Rigby was proceeding under § 25–4–78(3)(b) or § 25–4–78(3)(c). Therefore, the court finds *Smitherman* controls here and bars by way of collateral estoppel any argument or proof that Rigby was terminated for any reason other than violation of his employer's policies and procedures, as found by the unemployment-compensation-benefit-appeals referee.[6] Because Rigby, therefore, cannot even make a showing for his retaliation claim, Marshall's motion for summary judgment as to this outstanding federal claim for injunctive relief will be granted.

An appropriate judgment will be entered.