Willie Mae RAWLINSON, Plaintiff,

v.

WHITNEY NATIONAL
BANK, Defendant.

Civil Action No. 2:04cv0226–T.

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 10, 2005.

Fred Frank Bell, Hayneville, AL, for Plaintiff.

Henry Philip Julien, Jr., The Kullman Firm, New Orleans, LA, Elizabeth Pugh Odom, Frank Daniel Wood, Jr., The Kullman Firm, Birmingham, AL, for Defendant.

## OPINION

MYRON H. THOMPSON, District Judge.

In this race-discrimination lawsuit, plaintiff Willie Mae Rawlinson, an African American, sued her former employer, defendant Whitney National Bank, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17. Rawlinson asserts two claims: (1) that, while working as a Whitney Bank teller, she was subjected to racially disparate treatment; and (2) that the bank eventually terminated her employment because her race. Jurisdiction is proper under 42 U.S.C.A. § 2000e–5(f)(3) (Title VII), 28 U.S.C.A. §§ 1331 (federal question), and 1343(a)(4) (civil rights).

On Whitney Bank's motion for summary judgment, this court now considers whether the record adequately supports Rawlinson's Title VII claims. For the reasons that follow, summary judgment will be granted.

## I. SUMMARY–JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to in-

terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed.R.Civ.P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL BACKGROUND

The following facts are construed in Rawlinson's favor as the non-moving party:. Rawlinson worked as a bank teller for over 25 years. Beginning in January 2001 until she was terminated in 2003, she worked as a senior teller at Whitney Bank in Autaugaville, Alabama.[1] She was the only African–American person employed at the bank's Autaugaville branch. Rawlinson's employment at Whitney Bank depended upon her compliance with the rules and regulations outlined in the bank's "Operating Policy and Procedure Manual," which included the "Teller Difference Policy."[2] The Teller Difference Policy is a graduated disciplinary action program that the bank uses for teller infractions such as cash handling errors, fraud, and procedural violations. The policy provides for three tiers with a specified disciplinary action for each tier. Rawlinson's job evaluations from January 2001 until July 2003 indicate that she met or exceeded the bank's performance expectations.

The parties point to the following incidents, beginning in the summer of 2003, that led to Rawlinson's termination:

*First:* On July 11, 2003, Rawlinson was disciplined for repeatedly reporting inaccurate teller balances. Pursuant to the Teller Difference Policy, Rawlinson's supervisor, Judie May, placed Rawlinson on Tier II status and gave her a written warning to "slow down and concentrate on each transaction to avoid further differences ... [that] could result in further disciplinary action, up to and including discharge of employment."[3]

---

1. From 1978 until 2001, Rawlinson worked as a teller for the former Prattville Bank in Autaugaville. In 2001, Whitney Bank acquired Prattville Bank and, as part of the acquisition, Rawlinson and other Prattville Bank employees were moved into Whitney Bank's employment. Defendant's evidentiary submission in support of motion for summary judgment (Doc. No. 14), exhibit 1, Rawlinson deposition, pp. 111–112.

2. Plaintiff's response in objection to defendant's motion for summary judgment (Doc. No. 18), exhibit F, Whitney Bank Operating Policy and Procedure Manual, p. CP101–1.

3. Defendant's brief in support of motion for summary judgment (Doc. No. 13), p. 4.

*Second:* On August 6, 2003, Rawlinson was disciplined for failing to follow check-cashing procedures when she erroneously cashed a customer's $ 600 check. Because Rawlinson was unable to recover the money, May placed her on Tier III status, which included a 30–day probationary period.

*Third:* The parties highly contest the following facts surrounding Rawlinson's third disciplinary infraction, which ultimately led to her termination. On August 28, 2003, Whitney Bank received a shipment of currency. Rawlinson, who was the senior teller, and Carol Macon, a white platform teller, were the only tellers at the bank when the money was delivered. As the senior teller, Rawlinson verified the delivery amount and signed for the money. During the course of the day, Rawlinson and Macon again recounted and repackaged the delivered money. At the close of business, Rawlinson asked Macon accompany her into the bank's dual-control vault to store the money, but Macon refused, telling Rawlinson that the money could remain overnight in Rawlinson's teller vault. According to bank policy, both the senior teller and the platform teller are responsible for ensuring that all excess currency are kept in the dual-control vault and that a log is kept verifying this; both the senior teller and the platform teller must be present for either to enter the vault.[4] Because Macon refused to enter the dual-control vault with her, Rawlinson placed the money in her teller vault, indicating on her balance sheet that all of the delivered money had been counted and verified. That night, the bank's cleaning crew found $ 10,000 of the delivered money in a trash container. The next day, when questioned about the misplaced money, both Rawlinson and Macon denied knowing how the cash got into the trash container. The bank, however, cited Rawlinson not for failing to put the delivered money in the dual-control vault but rather for "force balancing," that is, using ticket totals, when she balanced her account for the day. According to the bank, if she had counted each bundle, rather than force balancing, she would have discovered that she was $ 10,000 short.

*Fourth:* On August 29, Rawlinson did not know what balance to pay a customer to close out the customer's account, and she had to ask the bank manager for guidance. According to the bank, as a senior teller Rawlinson should have known what balance to pay.

*Fifth:* On August 30, while the bank was still investigating the misplaced $10,000, Rawlinson failed to print a teller balance sheet at the close of the business day.

On September 4, 2003, two days before her probationary period would have ended, Whitney Bank terminated Rawlinson's employment, noting "unsatisfactory job performance and negligence" and citing the last four of the above incidents to support

---

4. According to the bank's Operating Policy and Procedure Manual, the platform teller and senior teller are primarily responsible for ensuring that:

"All excess currency must be kept in the Dual Control Cash Vault.

2. A combination of Platform Staff, Senior Tellers, and teller with the exception of two tellers must be present to enter the Dual Control Cash Vault.

The Dual–Control Log *must* be kept in the Dual–Control Vault at all times.

4. Whenever currency is added to the vault, the Platform Staff/Senior Teller present must verify, in bulk, the amount of currency being added to make sure it is correct before being added to the totals in the log."

Plaintiff's response in objection to defendant's motion for summary judgment (Doc. No. 18), exhibit F, Whitney Bank Operating Policy and Procedure Manual, p. CP201–1.

Rawlinson's sub-par rating and termination.[5]

## III. DISCUSSION

Title VII makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C.A. § 2000e–2(a)(1). Under the 1991 amendments to this Act, "an unlawful employment practice is established when the complaining party demonstrates that race . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C.A. § 2000e–2(m). In addition, the 1991 amendments provide that, "[o]n a claim in which an individual proves a violation . . . and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court . . . (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) . . . ; and (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment." 42 U.S.C.A. § 2000e–5(g)(2)(B). Thus, "under these amendments, if the employee shows merely that race was a motivating factor, [s]he has established liability and thus may be entitled to some relief. Whether the employer has met its "same action" burden of proof would go to the nature of the relief available." *Hall v. Ala. Ass'n of Sch. Bds.*, 326 F.3d 1157, 1165 (11th Cir.2003).

In considering a claim of discrimination, therefore, the court must go through a two-step fact-finding process. In the first step, the court must determine whether the plaintiff has proved by a preponderance of the evidence that her race was a motivating factor for the defendant's decision, even though other factors also motivated the defendant. If the plaintiff has shown this fact by a preponderance of the evidence, then liability is established and the court must go to step two of the process. At step two, the court must determine whether the defendant has proved by a preponderance of the evidence that it would have taken the same adverse-employment action against the plaintiff even in the absence of the impermissible factor. *Herawi v. State of Alabama Dep't of Forensic Scis.*, 311 F.Supp.2d 1335, 1344 (M.D.Ala.2004) (Thompson, J.); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101, 123 S.Ct. 2148, 2155, 156 L.Ed.2d 84 (2003) (in order to obtain a mixed-motive jury instruction under Title VII, 42 U.S.C.A. § 2000e–2(m), "a plaintiff need only present sufficient evidence for a reasonable jury to conclude by a preponderance of the evidence, that 'race . . .' was a motivating factor for any employment practice," and a plaintiff need not present 'direct evidence' of discrimination to obtain the mixed-motive jury instruction).

As stated, Rawlinson asserts two claims against Whitney Bank: (1) that, while working as a Whitney Bank teller, she was subjected to racially disparate treatment; and (2) that the bank eventually terminated her employment because her race. With respect to Rawlinson's first claim, the bank argues that the record does not create an inference of racially disparate disciplinary actions. With respect to her second claim, the bank argues that: (1) she is collaterally estopped from relitigating the reason for her termination because that issue has already been fully and fairly

---

5. *Id.*, exhibit B, Rawlinson termination letter.

adjudicated in a prior state-court proceeding; and (2) the record does not create and inference of racially discriminatory termination.

## A. Rawlinson's First Claim

█ Rawlinson alleges that Whitney Bank strictly enforced the Teller Difference Policy against her but downwardly departed from its disciplinary policy with respect to similarly situated white employees whose improper conduct was at least equally egregious to, if not more so than, hers. Rawlinson offers circumstantial evidence to establish the first step of Title VII's two-step process, that is, that her race was *a motivating factor* for the bank's actions toward her. The court, therefore, assesses the adequacy of the record to support this first step of Title VII's two-step process using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Herawi,* 311 F.Supp.2d at 1346 (there is nothing in *Desert Palace,* as it summarized Title VII law, that undermines the continued usefulness of *McDonnell Douglas* to trial courts, in either single or mixed-motive cases based on circumstantial evidence, for assessing Title VII liability).

Under *McDonnell Douglas,* the plaintiff bears the initial burden of establishing a prima-facie case of unlawful discrimination by a preponderance of the evidence; this prima-facie case requires " 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion.' " *Herawi,* 311 F.Supp.2d at 1344 (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977)). If the plaintiff successfully establishes a prima-facie case, then there is a rebuttable presumption of illegal discrimination; the burden then shifts to the

defendant to articulate a legitimate, non-discriminatory reason for its employment action. "This intermediate burden is 'exceedingly light.' " *Holifield,* 115 F.3d at 1564 (quoting *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir.1994)). Once the defendant satisfies this burden of production, in order to survive summary judgment, the plaintiff must come forward with evidence that would be sufficient to convince a reasonable fact finder that the defendant's articulated, non-discriminatory reason is pretextual to the extent that race was *a* motivating factor in the defendant's decision. *Id.* Under Title VII, as stated, the plaintiff need only show that race was 'a' motivating factor; the plaintiff need not show that race was 'the' motivating factor.

Of course, as stated above, the defendant can still preclude some of the Title VII relief if it can show that it would have taken the same adverse-employment action against the plaintiff even in the absence of the impermissible factor.

█ There are four elements that would create a rebuttable presumption of unlawful disparate treatment: (1) the plaintiff is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse-employment action; and (4) she was treated less favorably than a similarly situated individual outside of her protected class. *Maynard v. Bd. of Regents of Div. of Univs. of Florida Dep't of Educ.,* 342 F.3d 1281, 1289 (11th Cir.2003); *see also McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824.

Rawlinson has adequately established the first three elements of the prima-facie case: first, as an African–American person, she is a member of a protected class under Title VII; second, her above-average job assessment evaluations are evidence that she was qualified for her job as a senior teller; and, third, she was subject-

ed to adverse disciplinary action pursuant to the bank's Teller Difference Policy.

■ As to the fourth element, "evidence that similarly situated employees are disciplined more leniently is admissible to support a disparate treatment claim." *Anderson v. WBMG–42*, 253 F.3d 561, 564 (11th Cir.2001). Employees are similarly situated when "the comparator employees are involved in or accused of the same or similar conduct yet are disciplined in a different, more favorable manner." *Id.* (internal quotations omitted) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997)). "[T]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir.1999).

Rawlinson compares the disciplinary action taken against her with that taken, or not taken, against two other Whitney Bank tellers: Amanda Klein and Carol Macon, both of whom are white. The court will now address Rawlinson's evidence with respect to comparators Klein and Macon.

### 1. Comparator Amanda Klein

In August 2001, some two years before Rawlinson was first disciplined, Klein failed to follow bank check-cashing procedures and improperly cashed two checks; according to Rawlinson, Klein received a Tier II counseling memorandum. In October 2001, after improperly cashing a third check, Klein was placed on Tier III probationary status for 60 days. The bank subsequently removed Klein from Tier III status because she completed her probationary period without a further infraction.[6]

Rawlinson compares the bank's disciplinary action against Klein in 2001 to that

taken against her two years later. In July 2003, Rawlinson was issued a Tier II counseling memorandum for repeatedly turning in inaccurate teller balance sheets. In August 2003, the bank placed Rawlinson on Tier III probationary status for 30 days because she improperly cashed a customer's check. Two days before her probation would have ended, the bank terminated Rawlinson after three other incidents, including the $ 10,000 incident when she improperly "forced balanced" her account for the day.

On these facts, the court cannot conclude that a reasonable jury would believe that, because she is African American, Rawlinson was disciplined more harshly than Klein. It appears to the court that the women were disciplined in virtually an identical manner; both women were placed on Tier II status after committing at least two teller infractions and both women were subsequently placed on Tier III probation after their third infraction.

Admittedly, there are two notable differences between the Rawlinson and Klein disciplinary incidents: Klein was taken off of probation, whereas Rawlinson was terminated; and Klein was placed on probation for 60 days, while Rawlinson was placed on probation for 30 days. Neither of these differences, however, evinces racial discrimination. The fact that Klein was ultimately taken off of Tier III status is because she successfully completed her probationary period without further incident; Rawlinson, on the other hand, did not. Moreover, any disparate treatment between Rawlinson and Klein, in fact, cut in Rawlinson's favor because she was subjected to a shorter probationary period than Klein. The court, therefore, concludes that, with respect to comparator Klein, Rawlinson's evidence is deficient as

6. *Id.*, exhibit G, Klein employment improve- ment plan and probation record.

to the fourth element of the prima-facie case for disparate treatment.

■ Moreover, even if it is assumed that Rawlinson has established a prima-facie case, Rawlinson has failed to rebut Whitney Bank's articulated reason for treating her and Klein differently: that her and Macon's records of deficient work are quantitatively and qualitatively different in that Rawlinson's is much worse.

### 2. Comparator Carol Macon

Similarly, the record does not support an inference of racially disparate treatment with respect to comparator Macon.

To be sure, with respect to the fourth element, there is substantial evidence that Rawlinson and Macon were similarly situated in that both women were "involved in or accused of the same or similar conduct." *Anderson*, 253 F.3d at 564. With regard to the night that the $10,000 was found in a trash container, the parties do not dispute the following facts: both Rawlinson and Macon verified that the correct amount of money, approximately $ 200,000, had been delivered to the bank;[7] as senior teller, Rawlinson could only store $ 50,000 in her teller vault, therefore, approximately $150,000 of the delivered money constituted excess cash;[8] all excess cash should have been placed in the bank's dual-control vault;[9] according to the bank's policy, both a senior teller and platform teller were required to be present to enter the dual-control vault;[10] more practically, Rawlinson was incapable of entering the dual-control vault without Macon because Macon was the only other teller on duty who knew the other half of the vault's combination;[11] the money was not properly stored in the dual-control vault, but instead was placed in Rawlinson's teller vault.[12] On these undisputed facts, Rawlinson further alleges, and Macon disputes, that, at the close of business, Rawlinson asked Macon accompany her into the bank's dual-control vault to store the money, but Macon refused, telling Rawlinson that the money could remain overnight in Rawlinson's teller vault. Rawlinson argues that, though she was cited not for failing to put the delivered money in the dual-control vault but rather for "force balancing" her account at the end of the day, she and Macon were similarly situated because the two employees, by failing to store the excess cash in the bank's dual-control vault, "violated the identical rule or expressed work policy."[13] *Id.*

However, Rawlinson overlooks that her deficient conduct consisted of five incidents, the last four of which led to her termination; whereas, Macon was argu-

---

**7.** Defendant's supplemental evidentiary submission in support of motion for summary judgment (Doc. No. 17) exhibit 3, defendant's responses to plaintiff's first set of interrogatories, p. 10; *see also* plaintiff's response in opposition to defendant's motion for summary judgment (Doc. No. 18), exhibit K, Macon deposition, p. 45.

**8.** *Id.*, exhibit I, May deposition, pp. 33, 53.

**9.** *Id.*, pp. 51–52; exhibit J, Wyatt deposition, p. 54–55.

**10.** *Id.*, exhibit F, Whitney Bank Operating Policy and Procedure Manual, p. CP201–1.

**11.** *Id.*, exhibit I, May deposition, pp. 35–36.

**12.** *Id.*, p. 53.

**13.** It appears that no adverse-employment action was taken against Macon although, if you take Rawlinson's version of the facts as true, Macon may have been culpable as well in the $ 10,000 incident. Apparently, Whitney Bank did not credit Rawlinson's version. However, for purposes of Whitney Bank's summary-judgment motion, the court has assumed that Macon was culpable in the $ 10,000 incident.

ably guilty of only one.[14] It is the "cumulative records" to which the court must look in determining whether the plaintiff and her alleged comparator are similar, *Knight v. Baptist Hospital of Miami,* 330 F.3d 1313, 1316–1317 (11th Cir.2003), and Rawlinson's and Macon's cumulative work records are dramatically different: Rawlinson's record of deficient conduct is much worse.

Because Rawlinson has failed to establish that Macon is similarly situated to her, Rawlinson has failed to establish a prima-facie case of disparate treatment. Moreover, even if it is assumed that Rawlinson has established a prima-facie case, Rawlinson has failed to rebut Whitney Bank's articulated reason for treating her and Macon differently: that her and Macon's cumulative records of deficient work are quantitatively and qualitatively different in that Rawlinson's is much worse.

## B. Rawlinson's Second Claim

Rawlinson next contends that, in violation of Title VII, her race was a motivating factor in Whitney Bank's decision to terminate her. The bank's response is twofold: (1) Rawlinson is collaterally estopped from relitigating the reason for her termination because that issue has already been adjudicated in a prior state court proceeding; and, (2) the record does not create an inference of discriminatory termination.

### 1. Collateral Estoppel

■ Whitney Bank argues that Rawlinson is foreclosed from relitigating the reason for her termination because that issue has already been litigated and decided in a proceeding in an Alabama state court. Before delving into the merits of the

bank's collateral-estoppel argument, the court will recount the facts related to the state-court litigation: On September 7, 2003, Rawlinson filed a claim for unemployment benefits with the Alabama Department of Industrial Relations Unemployment Compensation Agency. On September 30, the agency's unemployment-benefits examiner denied Rawlinson's claim, concluding that she had been discharged for "misconduct" related to her "failure to properly perform [her] assigned job responsibilities after previous warning."[15] Rawlinson appealed the examiner's decision to the agency's hearings and appeals division. On December 5, the agency held an administrative hearing and, on December 30, affirmed the examiner's determination that Rawlinson was not entitled to unemployment benefits; specifically, the agency's appellate division found that Whitney Bank had met its burden of proving that Rawlinson engaged in "actual or threatened deliberate misconduct committed in connection with work after previous warnings," thereby disqualifying her from receiving unemployment benefits under 1975 Ala.Code § 25–4–78(3)(b).[16]

On March 15, 2004, Rawlinson, represented by counsel, filed an appeal to a state court, challenging the agency's interpretation and application of 1975 Ala.Code § 25–4–78(3)(b); specifically, Rawlinson challenged the agency's finding that she was terminated for misconduct that was preceded by previous warnings. Rawlinson contended that "all of the alleged mistakes were mistakes for which [she] had

---

**14.** *See supra* note 13.

**15.** Defendant's evidentiary submission in support of motion for summary judgment (Doc. No. 14), exhibit 2(c)(1), notice of determination.

**16.** *Id.,* exhibit 2(c)(3), transcript of appeals hearing.

not been previously warned." [17] Rawlinson named the Director of the Department of Industrial Relations and Whitney Bank as defendants. On July 20, the state court held that Rawlinson was disqualified from receiving unemployment benefits because the bank discharged her for misconduct that occurred after previous warning.[18]

Against this procedural backdrop, the bank now argues the Rawlinson is barred from relitigating the reason for her termination. As an initial matter, the court notes that, in its summary-judgment motion, Whitney Bank does not argue that Rawlinson's discriminatory-termination claim is barred under the doctrine "claim preclusion"; instead, the bank's argument rests solely upon the doctrine of collateral estoppel, commonly referred to as "issue preclusion." [19] Given this distinction in how the bank has framed its argument, the court's analysis focuses solely on "whether the issues actually litigated in the state proceeding are identical to the issues raised in the federal proceeding," such that Rawlinson is barred from relitigating those factual findings in this case.[20] After carefully considering the transcripts of the state proceedings, this court holds that Rawlinson is not precluded from present-

ing evidence that she was discriminatorily terminated.

To invoke collateral estoppel or issue preclusion properly, Whitney Bank must show three prerequisites: "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action. In addition, the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." *Nobles v. Rural Cmty. Ins. Servs.*, 303 F.Supp.2d 1292 (M.D.Ala.2004) (Thompson, J.), *aff'd*, 2004 WL 2155796, 116 Fed.Appx. 253 (11th Cir. 2004) (table).

Whitney Bank's issue-preclusion argument is flawed. First, the issue at stake in this litigation is whether Rawlinson has established Title VII liability by showing that race discrimination was 'a' motivating factor in her employment termination, even though there were other motivating factors. Under Title VII, as shown above, Rawlinson need not show that race the

17. *Id.*, exhibit 2(c)(2), administrative decision on Rawlinson's unemployment compensation claim.

18. *Id.*, exhibit 2(a), Autauga County Circuit Court order and judgment, dated July 20, 2004.

19. Because using precise legal terminology is critical when discussing the preclusive effects of former adjudication, this court adopts the Supreme Court's definitional framework set out in *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984): "The preclusive effects of former adjudication ... are referred to collectively ... as the doctrine of res judicata. Res judicata is often analyzed further to consist of two preclusion concepts:

issue preclusion and claim preclusion. Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect is also referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar." (internal quotations omitted); *see also Gjellum v. Birmingham*, 829 F.2d 1056, 1059 (11th Cir.1987) (adopting *Migra* definitions of res judicata, issue preclusion and claim preclusion)

20. Defendant's brief in support of motion for summary judgment (Doc. No. 13), p. 12.

'the' motivating factor or the 'sole' motivating factory to be entitled to prevail—at least, as to partial relief. In contrast, the issue before the administrative appeals panel was whether Rawlinson "was discharged for an actual or threatened deliberate act of misconduct committed in connection with the work after previous warning," in violation of 1975 Ala.Code § 24–4–78(3)(b).[21] This discrete question remained the focal issue in subsequent state-court proceedings; in her notice of appeal filed in state court, Rawlinson argued that "all of the alleged mistakes were mistakes for which [she] had not previously been warned."[22] Likewise, in its order and judgment against Rawlinson, the state court narrowly defined the issue presented and decided as "the reason for Plaintiff's discharge, particularly whether she was discharged for misconduct after previous warning as those terms are used in [1975 Ala.Code § 24–4–78(3)(b) ]."[23] A finding that race was a motivating, though not necessarily the determinative, factor in Rawlinson's termination would not be inconsistent with the finding in the state proceedings.

Second and similarly, whether Rawlinson's race was even a motivating factor in her termination was not actually litigated in the administrative or state-court proceeding. Rawlinson did not make a race discrimination claim in her notice appealing the administrative agency's findings of fact or final determination denying her unemployment benefits; the parties did not brief the issue of whether Rawlinson's race was a factor in her termination; nor

did the state court discuss Rawlinson's race in its final order and judgment. *E.g.*, *Brewer v. Dupree*, 2003 WL 23507795 *4 (M.D.Ala.) (Thompson, J.) (holding a plaintiff is not collaterally estopped from litigating an issue that was neither previously briefed by the parties nor discussed by the court in a prior lawsuit).

Third, the bank erroneously argues that "the state court unemployment benefits proceeding necessarily required resolution of the issue of the Plaintiff's termination."[24] The bank reads the effect of state proceedings much too broadly. As previously stated, the state proceedings on this matter involved a discrete issue of whether Rawlinson committed misconduct. Whether Rawlinson's race was a motivating, though not necessarily the determinative, factor was not a part of the state proceedings, nor was its determination necessary to the state proceedings.

Indeed, it was not necessary or critical to the state proceedings to decide whether Rawlinson was, in fact, actually terminated because her race. All the state court needed to decide was whether Rawlinson had committed an infraction after warning; whether other employees has done the same but had not been terminated was not at issue in the state proceedings. Moreover, it would have been fruitless for Rawlinson to have argued that other employees had committed similar infractions with punishment, for that defense would not necessarily entitle her to unemployment benefits. Such finger-pointing would not have trumped the determinative factual finding in the state proceedings that Raw-

---

21. Defendant's evidentiary submission in support of motion for summary judgment (Doc. No. 14), exhibit 2(c)(3), transcript of administrative appeals hearing, p. 2.

22. *Id.*, exhibit 2(e), papers and pleadings from Autauga County Circuit Court proceeding, plaintiff's notice of appeal, p. 2.

23. *Id.*, exhibit 2(a), Autauga County Circuit Court order and judgment, dated July 20, 2004.

24. Defendant's brief in support of motion for summary judgment (Doc. No. 13) p. 13.

linson had indeed engaged in misconduct. In contrast, in this federal proceeding, the fact that Rawlinson committed misconduct answers only one of the questions at issue. The second question is whether a white person who engaged in similarly serious misconduct was not similarly disciplined, that is, terminated.

To be sure, Rawlinson is collaterally estopped from relitigating whether she committed misconduct after previous warnings. This fact, as stated, however, is not fatal to her discriminatory-termination claim. Thus, Rawlinson may have committed the type of misconduct that, under § 24–4–78(3)(b), statutorily disqualifies her from receiving unemployment benefits while, simultaneously, being subjected to racially discriminatory termination in violation of Title VII.

At first glance, the court's holding today might be read as contradicting its prior holding in *Rigby v. Marshall,* 134 F.Supp.2d 1259 (M.D.Ala.2000) (Thompson J.). In *Rigby,* this court dismissed the plaintiff's § 1983 lawsuit asserting that his former employer illegally discharged him in retaliation for the exercise of First Amendment rights; the court held that the plaintiff was collaterally estopped from relitigating an unemployment-compensation-benefits examiner's finding that he was terminated for misconduct under § 25–4–78(3)(b). *Rigby,* however, is distinguishable from this case in two ways. First, in *Rigby,* the plaintiff's claim was based on § 1983, while here Rawlinson's claim is based on Title VII. This distinction is important because, to prevail under § 1983 where the plaintiff relies on circumstantial evidence, the plaintiff must show that the impermissible factor was 'the' motivating factor for the adverse-employment action, while, to prevail under Title VII, the plaintiff need only show that the impermissible factor was 'a' motivating factor for the adverse-employment action; a finding in a state proceeding that a permissible factor was "the" reason behind an adverse-employment action would not be inconsistent with a finding that an impermissible factor was "a" motivating factor as well. Second, all of the events and issues that were at the heart of the § 1983 First Amendment claim in *Rigby* were also at the heart of the unemployment-compensation claim. By contrast, Rawlinson's discrimination claim turns not exclusively on whether she committed the infraction with which she is charged but also on whether another person committed a similarly serious infraction but was not similarly disciplined.

The court, therefore, holds that whether Rawlinson's race was a motivating factor in her employment termination is an issue that has not been previously adjudicated, and the court now turns its attention to the merits of her claim.

### 2. Evidence of Discriminatory Termination

As stated above, to support her claim for discrimination under Title VII, Rawlinson must provide sufficient evidence that her race was a motivating factor in the bank's decision to terminate her. *Hall,* 326 F.3d at 1165. For the reasons given above, Rawlinson has failed to establish a prima-facie case that her termination was based on her race.

Macon, the comparator upon whom Rawlinson relies to support her prima-facie case, was not similarly situated to her. As stated, Rawlinson overlooks that her deficient conduct consisted of five incidents, the last four of which led to her termination; whereas, Macon was arguably guilty of only one. It is the "cumulative records" to which the court must look in determining whether the plaintiff and her alleged comparator are similar, *Knight,* 330 F.3d at 1316–1317, and Raw-

linson's cumulative work record is much worse than Macon's.

Moreover, even if it is assumed that Rawlinson has established a prima-facie case, Rawlinson has failed to rebut Whitney Bank's articulated reason for treating her and Macon differently: that her and Macon's cumulative records of deficient work are quantitatively and qualitatively different in that Rawlinson's is much worse.[25]

## IV. CONCLUSION

In sum, there is inadequate evidence for a jury to conclude that Rawlinson was subjected to racially discriminatory treatment and eventual termination. Whitney Bank is therefore entitled to summary judgment.

As appropriate judgment will be entered.

## JUDGMENT

In accordance with the memorandum opinion entered today, it is the ORDER, JUDGMENT, and DECREE of the court that:

(1) Defendant Whitney National Bank's motion for summary judgment (Doc. No. 12) is granted.

(2) Judgment is entered in favor of defendant Whitney National Bank and against plaintiff Willie Mae Rawlinson, with plaintiff Rawlinson taking nothing by her complaint.

It is further ORDERED that all other outstanding motions are denied as moot.

It is further ORDERED that costs are taxed against plaintiff Rawlinson, for which execution may issue.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

---

25. For reasons unknown to the court, Rawlinson divided her challenge to her termination into two claims, one charging disparate treatment while an employee of Whitney Bank and the other charging discriminatory termination. The court has done likewise, though the court cannot see how her first claim resulted in any adverse-employment action other than her termination, and absent an adverse-employment action a plaintiff has not stated a Title VII claim. *Stavropoulos v. Firestone*, 361 F.3d 610, 616–617 (11th Cir.2004).