# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 22, 2012 Session

## PLANTS, INC. v. FIREMAN'S FUND INSURANCE COMPANY ET AL.

### Appeal from the Circuit Court for Warren County
#### No. 3353CV      Larry B. Stanley, Jr., Judge

### No. M2011-02063-COA-R3-CV - Filed August 13, 2012

At issue is the scope of a binding arbitration clause in a federally-reinsured multiple peril crop insurance policy and the scope of federal preemption of common law claims. The insured, a nursery in Warren County, Tennessee, suffered a catastrophic loss of stock, primarily trees and shrubs, due to a tornado on April 7, 2006. The insured submitted a claim in excess of a million dollars. The adjuster determined, due to "under-reporting of inventory", that the insured was only entitled to recover $195,225. The insured demanded arbitration; the arbitrator ruled that the insured was due no additional payment. Thereafter, the insured filed this action asserting common law claims against the insurer, its adjustment firm, and the independent insurance agency that solicited the policy, for breach of contract, negligence, breach of the duty of care, negligent misrepresentation, and statutory bad faith. The trial court summarily dismissed the claims against the insurer and its adjustment firm finding the claims were barred by collateral estoppel and res judicata because the issues were decided at arbitration and that the insured's only remedy was judicial review of the arbitration decision. On appeal, the insured contends that its state law claims were not barred by the doctrines of collateral estoppel and res judicata. Appellees disagree and additionally assert that the insured's common law claims are preempted by federal law. We have determined the claims for breach of contract, breach of duty of care, and statutory bad faith are preempted by federal law; however, the claims for negligence and negligent misrepresentation are not preempted by federal law and are not barred by the doctrines of collateral estoppel or res judicata. Therefore, we affirm in part, reverse in part, and remand this action for further proceedings in accordance with this decision.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed in Part; Reversed in Part and Remanded

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT, J., and BEN H. CANTRELL, SR. J., joined.

Mickey Hall, Winchester, Tennessee, for the appellant, Plants, Inc.

Jeffrey S. Dilley, Clarksdale, Mississippi, for the appellees, Fireman's Fund Insurance Company, Rural Community Insurance Company, Rural Community Insurance Services, Wheeler Insurance Agency, Inc., and Louis M. Wheeler, individually, and as agent for other defendants.

**OPINION**

This is one of two separate civil actions and appeals by the plaintiff/appellant Plants, Inc. The separate cases arise from two substantial losses to Plants' nursery stock in April of consecutive years. The first loss, which is at issue in this appeal, was due to a tornado in April of 2006. The second loss, which is at issue in a separate appeal, was due to a severe freeze that occurred in April of 2007.[1] The issues in both cases pertain to the same policy of insurance and the scope of the arbitration clause therein.

Plants, the owner and operator of a tree and shrub nursery in Warren County, Tennessee, was insured in 2006 under a federally-reinsured multiple peril crop insurance ("MPCI") policy[2] issued by Fireman's Fund Insurance Company ("Fireman's Fund") and serviced by Rural Community Insurance Agency, Inc. d/b/a Rural Community Insurance Services ("RCIS"). The independent agent through which the policy was sold to Plants was Louis M. Wheeler of Wheeler Insurance Agency, Inc.

Following the tornado in April of 2006, Plants timely reported its claim for inventory losses to RCIS, which was responsible for adjusting the loss. In the course of its investigation, RCIS determined that Plants was under-insured, meaning that the value of Plants' inventory on the date of loss, April 7, 2006, exceeded the value reported on the application. This triggered the application of an under-insured report factor ("URF"). Based upon this, RCIS determined that Plants was entitled to recover only $195,225. As a result Plants demanded arbitration as is required under the policy.

During arbitration, Plants contended that it should not be held to the terms of the policy because of misrepresentations made by Louis Wheeler regarding coverage and because RCIS failed to provide a copy of the insurance policy to Plants. A final award was

---

[1]*See Plants, Inc. v. Fireman's Fund Insurance Company, et al.*, No. M2011-02274-COA-R3-CV, 2012 WL _____ (Tenn. Ct. App. July __, 2012).

[2]MCPI policies are governed by and issued under authority of the Federal Crop Insurance Act, 7 U.S.C.A. § 1501 *et seq.* and regulations promulgated under authority of the Act.

issued by the arbitrator on May 30, 2008, in which the arbitrator ruled that Plants was not entitled to any additional indemnity under the policy. The arbitrator also rejected Plants' state law claims, which the arbitrator held were preempted by federal law unless Plants could demonstrate that RCIS failed to comply with FCIC procedures. Plants did not seek judicial review of the arbitration award.

On May 22, 2009, Plants filed this action in the Circuit Court for Warren County against RCIS, Fireman's Fund, Rural Community Insurance Company, Wheeler Insurance Agency, and Louis Wheeler.[3] In this action, Plants asserted claims for breach of contract, negligence, breach of the duty of care, negligent misrepresentation, and statutory bad faith pursuant to Tennessee Code Annotated § 56-7-105. RCIS, Fireman's Fund, and RCIC filed motions for summary judgment. By order entered on February 25, 2011, the trial court granted summary judgment upon the finding that the issue of whether Plants was entitled to additional indemnity was fully addressed in the arbitration and the trial court was not permitted to review this decision based upon principles of res judicata and collateral estoppel.[4] RCIS, Fireman's Fund, and RCIC thereafter filed a motion for entry of a final judgment, which the trial court granted pursuant to Tennessee Rule of Civil Procedure 54.02. Plants filed a timely appeal.

## ANALYSIS

In this appeal, Plants asserts that the trial court erred in dismissing its state law claims against Fireman's Fund, RCIC, and RCIS ("collectively Defendants") based upon the doctrines of res judicata and collateral estoppel. Plants contends the arbitration was limited in scope to an interpretation of the terms of the policy. It also contends the sole state law claim advanced in the arbitration was for reformation of the insurance policy based upon the alleged misrepresentations. Defendants contend the trial court correctly ruled that the doctrines of res judicata and collateral estoppel bar Plants' state law claims because, it asserts, they were addressed in arbitration. Defendants further assert that such claims are preempted by federal law governing these types of insurance policies and, therefore, Plants was precluded from bringing such claims outside of the procedures set forth in the federal statutes and regulations, which require arbitration and a judicial review of the arbitration as the exclusive remedy.

---

[3]An amended complaint was filed on April 22, 2010.

[4]Defendants, Wheeler Insurance Company and Louis Wheeler, also filed motions for summary judgment, which the trial court denied because they were not parties to the arbitration and the court found there were genuine issues of material fact as to Plants' claims against these defendants. Thus, Plants' claims against Wheeler Insurance Company and Louis Wheeler remain viable in the trial court.

This appeal arises from the grant of summary judgment upon a legal determination that Plants' claims were barred by the doctrine of res judicata and collateral estoppel. There are no genuine issues of material fact and the issues on appeal present questions of law, upon which we review the trial court's judgment de novo with no presumption of correctness. *Martin v. Norfolk Southern Ry. Co.,* 271 S.W.3d 76, 84 (Tenn. 2008).

## I. Federal Crop Insurance

Multiple peril crop insurance ("MPCI") is a federally regulated and subsidized insurance made available to farmers pursuant to the Federal Crop Insurance Act ("FCIA"), 7 U.S.C.A. § 1501 *et seq. Ledford Farms v. Fireman's Fund Ins. Co.*, 184 F. Supp. 2d 1242, 1243 (S.D. Fla. 2001). The terms and conditions of MPCI policies are mandated by the Federal Crop Insurance Corporation ("FCIC"), which is a governmental corporation and an agency of and within the United States Department of Agriculture and was created pursuant to the FCIA. *Nobles v. Rural Comty. Ins. Servs.*, 303 F. Supp. 2d 1292, 1295 (M.D. Ala. 2004); *Ledford Farms*, 184 F. Supp. at 1243. Despite the governance by the FCIC, MPCI policies can be issued by private insurance companies; however, these policies are subject to regulations and provisions promulgated by the FCIC concerning the sale, issuance, and service of MPCI policies. *Nobles*, 303 F. Supp. 2d at 1295. All MCPI policies are "backed (reinsured) by the FCIC; all premiums collected for MPCI policies are paid to the United States government, and all claims paid under MPCI policies are paid with United States Treasury funds." *Id*.

## II. Arbitration Provision & Federal Preemption

The Basic Provisions of the MPCI policies contain a section entitled "Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review," which is set forth in the federal regulation 7 C.F.R. § 457.8:

> (a) If you and we fail to *agree on any determination* made by us except those specified in section 20(d), the disagreement may be resolved through mediation in accordance with section 20(g). If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA), except as provided in sections 20(c) and (f), and unless rules are established by FCIC for this purpose. Any mediator or arbitrator with a familial, financial or other business relationship to you or us, or our agent or loss adjuster, is disqualified from hearing the dispute.

(b) Regardless of whether mediation is elected:

(1) The initiation of arbitration proceedings must occur within one year of the date we denied your claim or rendered the determination with which you disagree, whichever is later;

(2) If you fail to initiate arbitration in accordance with section 20(b)(1) and complete the process, you will not be able to resolve dispute through judicial review;

(3) If arbitration has been initiated in accordance with section 20(b)(1) and completed, and judicial review is sought, suit must filed not later than one year after the date the arbitration decision was rendered;

(4) In any suit, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, an interpretation must be obtained from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC. Such interpretation will be binding.

(c) Any decision rendered in arbitration is binding on you and us unless judicial review is sought in accordance with section 20(b)(3). Notwithstanding any provision in the rules of the AAA, you and we have the right to judicial review of any decision rendered in arbitration.

. . .

(f) In any mediation, arbitration, appeal, administrative review, reconsideration or judicial process, the terms of this policy, the Act, and the regulations published at 7 CFR chapter IV, including the provisions of 7 CFR part 400, subpart P, are binding. Conflicts between this policy and any state or local laws will be resolved in accordance with section 31. If there conflicts between any rules of the AAA and the provisions of your policy, the provisions of your policy will control.

Defendants argue that this arbitration provision, which is a federal regulation, bars as a matter of law *any* claims against them. Defendants argue that because the policy terms are

defined by federal law, any claims against Defendants are preempted. In addition to the arbitration provision set forth above, Defendants also argue that two other regulations, 7 C.F.R. § 400.176 and 7 C.F.R. § 400.352, provide further support for federal preemption for all claims arising in connection with MPCI policies.

Plants demanded arbitration as required by the MPCI policy and FCIC regulations. In the arbitration, Plants asserted that the policy should be reformed due to alleged misrepresentations of Louis Wheeler, the agent who solicited the policy, and because RCIS failed to deliver a copy of the policy to Plants. The arbitrator found that the policy, which was itself a federal regulation, was "binding on insureds regardless of actual knowledge of what was in the policies or regulations issued by the FCIC." Thus, the arbitrator found that it was "unable to reform the policy to take into account the claims made by Plants, which [were] grounded in state law."[5]

Plants cites to *Nobles v. Rural Community Insurance Services*, 303 F. Supp. 2d 1292 (M.D. Ala. 2004), in support of its position that its state law claims are still viable and not precluded based upon federal preemption. In *Nobles*, two insureds filed suit against their insurer for state law claims for breach of contract, fraud, suppression of material facts, negligence and wantonness, negligent and wanton failure to supervise and train employees, and bad faith. *Id*. at 1295. The claims were based on allegations that the insurer told them their land was insurable under a MPCI policy, but later denied the crop-loss claim on the basis that their land was uninsurable.[6] *Id*. The insurer claimed that the state law claims were preempted by the FCIA and FCIC regulations. *Id*. at 1297. Notably, the insurer in *Nobles* did not argue that the FCIA completely preempted state law. Instead, the insurer argued that it was complying with established FCIC rules, regulations, and directives when it informed the insureds of the denial, and therefore any state law claims were inconsistent with FCIC regulations and therefore preempted. *Id*. at 1296-97. In making its argument, the insurer relied upon a Tenth Circuit Court of Appeals opinion *Meyer v. Conlon*, 162 F.3d 1264, 1268 (10th Cir. 1998), in which the court stated that "state law applies to FCIA contracts, with two exceptions: (1) when FCIC contracts provide that state law does not apply and (2) when state law is inconsistent with FCIC contracts." *Id*. at 1297[7] (quoting *Meyer*, 162 F.3d at 1268)

---

[5]Plants did not seek judicial review of the arbitrator's award, the procedure stated in the policy and federal regulations; instead, Plants filed this action.

[6]The actions were originally brought in state court, however, the action was removed to the federal court based upon diversity of citizenship jurisdiction. *Nobles*, 303 F. Supp. 2d at 1294.

[7]It should be noted that in the decision in *Meyers*, the court rejected the complete preemption argument stating: "The FCIA does not wholly preempt state law; rather, it preempts state law inconsistent (continued...)

-6-

(citing 7 U.S.C.A. § 1506(l). The insurer also pointed to FCIC regulation 7 C.F.R. § 400.352, which addressed the preemption of state and local laws and regulations, for the argument that "lawsuits based on actions authorized or required by the FCIC regulations or the FCIA are preempted by federal law." *Id*. The regulation stated:

> State or local governmental entities or non-governmental entities are specifically prohibited from . . . (4) levy[ing] fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies . . . arising out of actions or inactions on the part of such . . . entities authorized or required under the Federal Crop Insurance Act or by regulations or procedures issued by the Corporation (nothing herein is intended to preclude any action on the part of any authorized. . . entity concerning any actions or inactions on the part of the . . . company whose actions or inaction is not authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations or procedures issued by the Corporation).

7 C.F.R. § 400.352(b)(4) (2004).[8]

The court rejected the insurer's argument finding that it was "flawed" for two main reasons. *Nobles*, 303 F. Supp. 2d at 1297. First, the court noted that the underlying assertion in the insureds' state law claims was not the ultimate denial of their insurance coverage, but the act of the insurer in telling them that their land was insurable, when under the FCIC regulations it was not, which was not an action required under the regulations. *Id*. Further, the court noted as to the state law claims for suppression of material fact and negligence and wantonness claims, the failure of the insurer to inform the insureds of certain provisions under the insurance contract was also not a requirement of the regulations. *Id*. Therefore, the court held that the state law claims fell within the parenthetical language contained in 7 C.F.R. § 400.352(b)(4), which stated "'nothing herein is intended to preclude any action on the part of any authorized . . . entity concerning any actions or inactions on the part of the . . . company whose action or inaction is *not* authorized or required' under the FCIA or the FCIC rules and regulations." *Id*. at 1298 (quoting 7 C.F.R. § 400.352(b)(4)) (emphasis in original).

---

[7](...continued)
with the purpose of the Act." *Id*. (citing *Meyers*, 162 F.3d at 1268).

[8]As we shall address later in this opinion, the language of this regulation has changed since the opinion in *Nobles*.

The *Nobles* court also rejected the insurer's assertion that "any time an insurance company denies a claim because it believes FCIC regulations require the claim to be denied, any state-law claims by the party whose insurance claim was denied would be preempted by federal law." *Id*. The court rejected this argument citing the decision of the Eleventh Circuit Court of Appeals in *Williams Farms of Homestead, Inc. v. Rain and Hail Ins. Servs., Inc.*, 121 F.3d 630 (11th Cir. 1997), which held that "Congress intended to leave insureds with their traditional contract remedies against their insurance companies. Such remedies include a state law breach of contract claim. . . . The existence of a claim against a private reinsured company is therefore consistent with the scheme of the FCIA." *Id*. (quoting *Williams*, 121 F.3d at 635). The *Nobles* court also looked to additional language in *Meyers* for its decision, which permitted state law causes of action, including those for breach of contract, negligent misrepresentation, and bad faith, finding they were not precluded by the FCIA or FCIC regulations. *Id*. (citing *Meyers*, 162 F.3d at 1269-70). Thus, the *Nobles* court determined that the state law claims asserted in that action were not explicitly preempted by the FCIC or FCIA regulations, and, therefore, were not preempted by federal law. *Id*.

The United States District Court for the Southern District of Florida, addressed the interplay between state law claims, federal preemption, and the arbitration provisions applicable to MPCI policies in *Ledford Farms, Inc. v. Fireman's Fund Ins. Co.*, 184 F. Supp. 2d 1242 (S.D. Fla. 2001). In that case, an insured filed suit in state court seeking a declaratory judgment to gain coverage under its MPCI policy for loss of its bean crop, and additionally asserting state law claims for breach of contract and breach of the implied obligation of good faith. *Id*. Prior to filing suit, the insured submitted a claim to its insurance company, but was denied based upon a determination that the farm failed to replant when it was practicable to do so, which was an exclusion under the policy. *Id*. at 1244. The insurance contract contained a previous version of the above-quoted arbitration provisions promulgated by the FCIC, which stated that: "If [insured] and [insurer] fail to agree on any factual determination, the disagreement will be resolved in accordance with the rules of the American Arbitration Association." *Id*. (quoting 7 C.F.R. § 451.8 (1998)). The district court looked to the decision in *Nobles* for guidance and held that the arbitration clause was not a complete bar to suit, but rather was a condition precedent that must be satisfied before an insured could commence legal action against the insurer. *Id*. at 1245. The court held that the determination of whether it was practicable to replant was a factual determination that must be resolved during binding arbitration, so the court stayed the state law causes of action pending the outcome of the arbitration proceeding. *Id*.

Several other courts have rejected so-called complete preemption arguments. In *Reimers v. Farm Credit Services AgCountry*, No. CIV. A3-00-168, 2001 WL 1820379 (N.D. S.E. Jun. 22, 2001), the district court addressed the issue of complete preemption, "which converts an ordinary state law claim into a federal claim where the preemptive force of a

statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" for federal question jurisdiction. *Id*. at *2 (quoting *Gore v. Trans World*, 210 F.3d 944, 949 (8th Cir. 2000)).[9] The insureds in the action were five farmers who filed state law causes of action for breach of contract, professional negligence, misrepresentation, fraud, and violations of the North Dakota Insurance Code and Fraud Code against their insurer stemming from the partial denial of their claims for crop loss under their MPCI policies. *Id*. at *1. The court examined the issue of federal preemption in determining whether it had jurisdiction to entertain the state law causes of action. *Id*. After examining cases from other jurisdictions, the court determined that "the FCIA does not have the extraordinary preemptive force necessary for the application of the doctrine of complete preemption" such to give the district court jurisdiction.[10] The court reached this decision after examining several provisions of the FCIA and determining that none of its language expressly preempted state law claims such as the ones at issue in the action. *Id*. at *4. The court also addressed the preemptive effect of regulations promulgated by the FCIC under the authority of the FCIA, specifically discussing the two regulations cited by the Defendants in this action:

> To be sure, the FCIC regulations do preempt and limit certain state and local government action and interference. *See* 7 C.F.R. § 400.352 (listing examples of actions that are specifically prohibited). *See also State of Kansas ex rel. Todd v. United States,* 995 F.2d 1505, 1512 (10th Cir.1993) (holding that state regulations that interfere with the purpose of FCIA and its crop reinsurance contracts are preempted). Nevertheless, this type of preemption is merely a defense to a lawsuit; it is not a jurisdictional limitation. *See Hurt v. Dow Chem. Co.,* 963 F.2d 1142, 1144–45 (8th Cir.1992) (explaining that removal is not necessarily appropriate even if state-law authority is preempted). In

[9] Regular preemption analysis focuses on whether Congress intended to preempt state law. This intention can be found through an express provision in the statute or it may be implied where the scope of the statute indicates that Congress intended the federal law to exclusively occupy the field, or where state law is in actual conflict with federal law, or where state law stands as an obstacle to the accomplishment and execution of the full purpose and objective of Congress.

*Id*. at *2 (citing *Harris v. Great Dane Trailers, Inc.*, 234 F.3d 398 (8th Cir. 2000)). "Congress may delegate the preemption decision to the agency it authorizes to administer or enforce the federal statute." *Id*. (citing *Symers v. SmithKline Beecham Corp.*, 152 F.3d 1050 (8th Cir. 1998)).

[10]The district court noted, however, that it was not resolving the validity of the state law claims, which it held could potentially be inconsistent with FCIA or FCIC's regulations. *Reimer*, 2001 WL 1820379, at *3 n.3.

short, the Court has extensively reviewed the regulations cited by Great American and nowhere in its review does the Court ascertain an intent to completely preempt state court causes of action. "Complete preemption" is a recognized term of art, *see Meyer,* 162 F.3d at 1268 n. 2, yet the regulations do not employ this term. Neither do the regulations refer to "exclusive federal jurisdiction." In fact, the Court has not located, nor has Great American pointed to, any regulation setting out a general jurisdictional provision. Rather, at least two regulations elude to state court jurisdiction. First, § 400.352(b)(4) provides that "nothing herein is intended to preclude any action on the part of any authorized State regulatory body or any State court or any other authorized entity concerning any actions or inactions on the part of the agent, company, or employee ... whose action or inaction is not authorized or required under the [FCIA]." 7 C.F.R. § 400.352(b)(4). Second, § 400 .176(b) provides that a plaintiff may establish liability, under certain circumstances, in "a court of competent jurisdiction." *Id.* § 400.176(b). North Dakota district courts are courts of general jurisdiction, and thus competent. N.D. Cent.Code § 27–05–06. *See also Alumax Mill Prod., Inc. v. Congress Fin. Corp.,* 912 F.2d 996, 1002 (8th Cir.1990) (state courts have general jurisdiction). In light of this language and absent any language clearly expressing an intent to completely preempt state court causes of action, the Court concludes that removal was improper. *See Magee,* 135 F.3d at 602 (noting that Congress' intent to make a cause of action pleaded under state law removable to federal court must be clearly manifested).

*Id*. at *4-5.[11]

In *Agre v. Rain & Hail, LLC*, 196 F. Supp. 2d 905, 907 (D. Minn. 2002), several sugar beet growers filed state court actions against their crop insurers for failure to pay claims stemming from frost damage and for violations of the Minnesota Prevention of Consumer Fraud Act. The action was removed to the federal district court by the defendant insurers. *Id*. Like the federal district court in *Reimers*, the district court in *Agre* also addressed the issue of complete preemption in determining whether it had jurisdiction to entertain the actions. *Id*. at 910. The defendants focused primarily on the regulations promulgated by the FCIC. *Id*. The court, however, rejected the defendants' argument regarding complete federal preemption stating "[t]he simple fact that Congress has established an ordered regulatory scheme is insufficient to preempt all contract claims involving crop insurance." *Id*. at 911 (citing *Marcus v. AT&T Corp.*, 138 F.3d 46, 54 (2d Cir. 1998)). The court specifically

[11]The court noted that section 1506(1) of Title 7 of the United States Code provides the FCIC with the power to preempt state and local rules through its regulations. *Id*. at *5 (citing *Meyer*, 162 F.3d at 1268).

addressed 7 C.F.R. § 400.352(a) and 7 C.F.R. § 400.176, which it found "strongly suggest a willingness to allow state proceedings rather than preempting them." *Id*. at 912. Thus, the court held that "[i]n the face of this language, the Court is unconvinced that the FCIC regulatory text demonstrates congressional intent to preclude concurrent jurisdiction." *Id*.

The above authorities support the conclusion that the FCIA and the regulations promulgated by the FCIC under the authority of the FCIA leave open the door for certain state law actions. Significantly, however, the above quoted authorities were decided prior to changes in the regulations. Additionally, several of the authorities address the issue of complete preemption, but do not address regular preemption, with the federal courts noting this would be an issue to be raised defensively in the state court actions. *See Reimer*, 2001 WL 1820379, at *3 n.3. Defendants assert that changes in the regulation make this action distinguishable from that in *Nobles* and supports a finding that all state law claims are now preempted by the federal regulations. Thus, we turn to the current FCIC regulations.

## II. Current Regulations and their Application to this Action

Our research revealed limited authority on the issue of preemption under current federal regulations. We do however find some guidance in a recent decision, *Skymont Farms v. North,* No. 4:09-CV-77, 2012 WL 996619, at *1 (E.D. Tenn. Mar. 22, 2012). In *Skymont Farms*, the owner of several nurseries filed suit against its insurance company following the denial of its claims for coverage following a hail storm. *Id*. The insured alleged the insurers were "negligent in failing to obtain an insurance policy for Skymont Farms, were negligent in obtaining proper information from Plaintiffs to secure appropriate coverage, made misrepresentations regarding the procurement of such coverage upon which Plaintiffs relied, and breached their duties and contractual obligations to Plaintiffs." *Id*. The action was originally filed in Tennessee circuit court, but was removed to the federal district court on the basis of federal question jurisdiction. *Id*. In determining whether the district court had jurisdiction to hear the action, it addressed the issue of complete federal preemption. *Id*. at *6. The court adopted the holding of several district courts in ruling that the FCIA does not completely preempt the field of crop insurance. *Id*. at *6. In making its decision, the court looked to the decisions in *Agre* and *Reimers* discussed at length above. *Id*. at *6-7.

The court further addressed the effect of the regulations promulgated by the FCIC in a footnote:

> "Inclusion of one thing indicates exclusion of the other." *Agre*, 196 F.Supp.2d at 912 n.8. The *Agre* court also looked to two regulations, 7 C.F.R. § 400.352(a) and § 400.176, but these sections have changed from what they stated in 2002 when *Agre* was decided, rendering them slightly less applicable

-11-

to the current analysis. *See also Reimers*, 2001 WL 1820379, at *5 (discussing the same regulations). Section 400.352 prohibits various kinds of state action to promulgate rules and regulations that would affect crop insurance policies, and the specific references to cases in state court have been eliminated. Section 400.176 prohibits policyholders from seeking reimbursement from a state fund or program for their crop insurance losses and restricts allowable damages against insurance companies. Although these regulations do not provide the obvious support against complete preemption outlined in *Agre*, it does not follow from these specific preemptions that the entire rubric of state law claims and state court actions against the private insurance companies or insurance agents would be excluded. Indeed, the inclusion of the restrictions in § 400.176(b) in a section entitled "state action preemptions" would seem to imply that such actions against an insurance company would take place in state court and the available damages would be accordingly limited. As the *Reimers* court noted, this type of preemption is not relevant to the complete preemption inquiry because it is defensive, or simple, preemption. 2001 WL 1820379, at *5. Furthermore, as noted above, even if these regulations contained language to suggest complete preemption, a federal regulation does not carry the weight of a statute in a complete preemption analysis.

*Id*. at *6 n.6.

Under the previous version of the provision, the court in *Ledford Farms* held that the arbitration provision was not a complete bar to state law claims, but a condition precedent that must be satisfied prior to the filing of a state law action when the language of the provision stated that if the parties failed to agree on any "factual determination" then the matter would go to arbitration. *Ledford Farms*, 184 F. Supp. 2d at 1245. However, the language in the current arbitration provision, codified at 7 C.F.R. § 457.8, now refers to "any determination" and § 457.8(a)(1) states that "[a]ll disputes involving determinations made by us . . . are subject to mediation or arbitration."[12] Defendants argue that this language requires that all disagreements with the insurer must be resolved through arbitration.

Defendants suggest that further support for their position that the terms of the policy control over "conflicting state law" is found in the current language of 7 C.F.R. § 400.352, entitled "State and local laws and regulations preempted":

(a) No State or local governmental body or non-governmental body shall have

---

[12]The regulation requires mediation or arbitration except for those specified in section 20(d) or (e), which are not applicable in this action. 7 C.F.R. § 457.8(a)(1).

the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the Corporation.

(b) The following is a non-inclusive list of examples of actions that State or local governmental entities or non-governmental entities are specifically prohibited from against the Corporation or any party that is acting pursuant to this part. Such entities may not:

(1) Impose or enforce liens, garnishments, or other similar actions against proceeds obtained, or payments issued in accordance with the Federal Crop Insurance Act, these regulations, or contracts or agreements entered into pursuant to these regulations;

(2) Tax premiums associated with policies issued hereunder;

(3) Exercise approval authority over policies issued;

(4) Levy fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjusters, or Federal employees arising out of actions or inactions on the part of such individuals or entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation (Nothing herein precludes such damages being imposed against the company if a determination is obtained from the FCIC that the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled); or

(5) Assess any tax, fee, or amount for the funding or maintenance of any State or local insolvency pool or other similar fund.

The preceding list does not limit the scope or meaning of paragraph (a) of this section.

7 C.F.R. § 400.352 (2005).

Defendants also point to 7 C.F.R. § 400.176 (2005) entitled "State action preemptions," which states:

(a) No policyholder shall have recourse to any state guaranty fund or similar state administered program for crop or premium losses reinsured under such Standard Reinsurance Agreement. No assessments for such State funds or programs shall be computed or levied on companies for or on account of any premiums payable on policies of Multiple Peril Crop Insurance reinsured by the Corporation.

(b) No policy of insurance reinsured by the Corporation and no claim, settlement, or adjustment action with respect to any such policy shall provide a basis for a claim of punitive or compensatory damages or an award of attorney fees or other costs against the Company issuing such policy, unless a determination is obtained from the Corporation that the Company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by the Corporation and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled.

We, however, disagree with Defendants' assertions that the arbitration provision and federal regulations completely eclipse the entirety of state law claims. The current form of the regulations quoted above reveal no conflict with state law claims for negligence, misrepresentation, or fraud. The language of the arbitration provision refers to disagreements over "determinations" made by the insurer presumably in accordance with the FCIA and FCIC regulations; however, misrepresentations regarding the policy or the applicability of a policy to a crop are distinguishable from a determination regarding the policy language and coverage under the policy. As *Skymont Farms* recognized, some state law claims appear to have been preempted and recoverable damages limited based upon the current language in 7 C.F.R. § § 400.352 and 400.176. *Skymont Farms*, 2012 WL 996619, at *6 n.6. Specifically, it appears that the current language of the arbitration provision and these two regulations would bar a breach of contract action as that would be based upon a "determination" by the corporation and would fall within the prohibitions contained in the above regulations. However, claims for negligence or misrepresentation do not conflict with these provisions.

-14-

"Preemption occurs when there is an outright or actual conflict between federal and state law." *BellSouth Telecommunications, Inc. v. Greer*, 972 S.W.2d 663, 670 (Tenn. Ct. App. 1997) (citing *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995); *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. at 368 (1986)). Preemption can also occur "by implication when compliance with both federal and state law is impossible or when state law obstructs the accomplishment of Congress's objectives." *Id*. (citing *Boggs v. Boggs,* 520 U.S. 833 (1997); *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 663 (1993); *California Fed. Sav. & Loan Ass'n. Guerra,* 479 U.S. 272, 281 (1987)). It can also arise when Congress's legislation is "so pervasive that it leaves no room for state legislative action." *Id*. (citing *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516 (1992); *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. at 368). Our courts should begin their inquiry with the presumption that Congress did not intend to preempt state law. *Id*. at 671. (citing *Building & Constr. Trades Council v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. at 224 (1993)). The proper approach is to reconcile the federal and state laws, rather than to seek out conflict where none clearly exists. *Id*. (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware*, 414 U.S. 117 (1973); *Exxon Corp. v. Governor of Maryland,* 437 U.S. at 130 (1978)). "State law should be displaced by federal law only to the extent there is a conflict." *Id*. (citing *Dalton v. Little Rock Family Planning Servs.*, 516 U.S. 474, 475–77 (1996)).

7 C.F.R. § 400.176 prohibits claims whose basis is the policy of insurance without a prior determination by the FCIC that there was a failure to comply with the terms of the policy and such failure resulted in the insured receiving a payment less than the amount the insured was entitled. However, state tort claims for negligence, misrepresentation, and fraud do not arise from the policy of insurance itself but from alleged tortious actions taken prior to the agreement being made or that occur outside the scope of the policy.

7 C.F.R. § 400.352 prohibits judgments or damages "arising out of actions or inactions . . . authorized or required under the [FCIA], the regulations, any contract or agreement authorized by the [FCIA], or by regulations, or procedures issued by [the FCIC]." As the court in *Nobles* recognized, misrepresentations are not actions or inactions "required or authorized" under the FCIA, federal regulations, or the policy provisions. *Nobles*, 303 F. Supp. 2d at 1297 (recognizing that "the key act underlying [plaintiffs'] fraud claim, for example, is not [defendant's] denial of their insurance coverage, but is instead [defendant's] act of telling them their land was insurable," which was a misrepresentation).

Thus, as noted in *Skymont Farms*, "it does not follow from these specific exemptions that the entire rubric of state law claims and state court actions against the private insurance companies or insurance agents would be excluded." *Skymont Farms*, 2012 WL 996619, at *6 n.6. Keeping in mind that state law should only be displaced by federal law when there is a conflict, we find that Plants' state law claims for negligent misrepresentation and

negligence are not preempted by federal law. *BellSouth Telecommunications, Inc.*, 972 S.W.2d at 670 (citing *Dalton*, 516 U.S. at 475–77). Based upon the language in the federal regulations, however, we hold that the claims for breach of contract, breach of the duty of care, and statutory bad faith pursuant to Tennessee Code Annotated § 56-7-105 are preempted for they pertain to actions or inactions "required or authorized" under the FCIA, federal regulations, or the policy provisions.[13]

## IV. Collateral Estoppel and Res Judicata

Having found that two of the state law claims asserted by Plants were not covered by the arbitration provision and that the state law claims were not preempted by the federal regulations, we must address the last issue: whether any of the surviving state law claims, negligence and negligent misrepresentation, asserted by Plants were barred by the doctrines of collateral estoppel and res judicata based upon the arbitration proceedings.

"'Under Tennessee law . . . the doctrine of 'collateral estoppel' operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit."' *Cain Field Nursery v. Farmers Crop Ins. Alliance, Inc.*, No. 4:09–cv–78, 2010 WL 3781760, at *7 (D.C. E.D. Sept. 21, 2010) (quoting *Smith v. Dawson-Smith*, 111 F. App'x 360, 362 (6th Cir. 2004) (citing *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995))). In Tennessee, "finding[s] made by an arbitrator have the same binding effect as judicial determinations made by a court." *Id.* (citing *Turpin v. Love*, 1973 WL 16997, at *4 (Tenn. Ct. App. Aug. 14, 1973); *Bright v. Spaghetti Warehouse, Inc.*, 1998 WL 205757 (Tenn. Ct. App. Apr. 29, 1998)).

When determining whether collateral estoppel applies to an action, the court should consider the following factors:

(1) whether the issues in the prior proceeding were the same as those raised in the present action; (2) whether the prior proceeding resulted in judgment on the merits; (3) whether the party in the present action was a party or in privity with a party to the prior action; and (4) whether there was full and fair opportunity to litigate the issue in the prior proceeding.

*Id.* (citing *Morris v. Esmark Apparel, Inc.*, 832 S.W.2d 563 (Tenn. Ct. App. 1991)).

---

[13]Tennessee Code Annotated § 56-7-105 sets forth a cause of action for bad faith refusal to honor a policy and thus is derivative of a determination regarding the policy itself and thus is preempted by the federal provisions.

The doctrine of res judicata is defined as a "[r]ule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action. . . . [T]o be applicable, it requires identity of cause of action, or person and parties to action, and of quality in persons for or against whom claim is made." *Richardson*, 913 S.W.2d at 459 (citing Black's Law Dictionary 1172 (5th ed. 1979)). Res judicata "bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." *Id*. (quoting *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn.1989) (quoting *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn.1987))).

We do not have the full record from the arbitration, however, it is clear from the Arbitrator's Award that the arbitrator only considered the state law claims in the context of reforming the insurance policy and the arbitrator rejected this claim based on federal preemption. Because the arbitrator's position was that federal law preempted any state law claims, the arbitrator did not consider the merits of Plants' state law claims regarding negligence or negligent misrepresentation (except to evaluate them in the context of whether RCIS failed to comply with FCIC procedures). Further, Plants' claims of misrepresentations and negligence on the part of agents of Defendants was not considered by the arbitrator. Therefore, we find that the trial court erred in dismissing Plants' claims for negligence and negligent misrepresentation based upon the doctrines of collateral estoppel and res judicata.

## V. RCIC AS A PARTY TO THE ACTION

Lastly, Defendants argue that RCIC was not a party to the insurance contract, RCIC had no involvement in the events at issue, and the trial court should have dismissed RCIC from this action. Defendants filed a motion for summary judgment to have RCIC dismissed, asserting that RCIC is a wholly-owned subsidiary of RCIS and it had no involvement in the issuance or servicing of the MPCI policy. In response, Plants stated that it was unfamiliar with the corporate structure of Defendants and could not respond without additional information. The trial court did not address this issue in its order dismissing Defendants. We decline to make a ruling on this issue without the trial court doing so first and remand this issue for the trial court to address.

### IN CONCLUSION

We affirm the dismissal of Plants' claims for breach of contract, breach of the duty of care, and statutory bad faith pursuant to Tennessee Code Annotated § 56-7-105.

We reverse the dismissal of Plants' claims for negligent misrepresentation and negligence.

This matter is remanded to the trial court for further proceedings consistent with this opinion and one-half of the costs of appeal are assessed against the appellant and one-half against the appellees.

_____
FRANK G. CLEMENT, JR., JUDGE